COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| FREDRICK MERIDA WARRINER, | § | |
| | | No. 08-11-00210-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 233rd District Court |
| | § | |
| DANA DIAN WARRINER, | | of Tarrant County, Texas |
| | § | |
| Appellee. | | (TC# 233-464137-09) |
| | § | |

# **O P I N I O N**

Fredrick Merida Warriner ("Appellant") appeals the decision of the trial court regarding the distribution of property relating to the divorce proceeding between Appellant and Dana Dian Warriner ("Appellee").[1] Appellant brings seven issues asserting: (1) objections to the trial court's Findings of Fact and Conclusions of Law; (2) the trial court abused its discretion by denying Appellant's Motion to Compel and allowing unsworn supplemental interrogatories and untimely filed disclosures into evidence; (3) the trial court erred in overruling Appellant's objection regarding Appellant's responses to two requests for production; (4) the trial court abused its discretion by allowing Appellee to file an Amended Sworn Inventory outside of the discovery period; (5) the trial court abused its discretion by not determining that certain property was the separate property of Appellant; (6) the trial court erred by allowing tax rolls into evidence in determining the property division of the parties; and (7) the trial court improperly considered a

---

[1] This case was transferred from the Second Court of Appeals to this Court pursuant to a docket equalization order entered by the Texas Supreme Court. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2005). We have applied precedent of the Fort Worth Court of Appeals. *See* TEX.R.APP.P. 41.3.

written closing argument made by Appellee's counsel following the close of the trial. For the reasons set out below, we affirm.

## BACKGROUND

The parties were married on April 8, 1995. Appellee filed a Petition for Divorce on August 26, 2009, and requested a disproportionate division of community property. Appellant filed a counter-petition.

Appellee filed a Certificate of Written Discovery on August 12, 2010. A Motion to Compel was filed by Appellee on August 30, seeking production of documents by Appellant and concerning Appellant's failure to provide discovery. A hearing was held on the Motion to Compel on September 14, 2010 before an associate judge, who granted Appellee's motion. Appellant and Appellee both requested a *de novo* hearing on the Motion to Compel, which the trial court heard prior to the start of the bench trial, along with other motions, including a motion to compel discovery and for sanctions filed by Appellant.

A bench trial was conducted on October 14, 2010. The only witnesses who testified at the trial were Appellee and her counsel. Appellant did not testify but called Appellee to testify. Under the theory of admission by a party opponent, Appellee presented Appellant's handwritten property inventory for the limited purpose of establishing that Appellant's inventory was consistent with Appellee's inventory, rather than for the truth of the declarations contained in Appellant's inventory. The trial court took judicial notice of Appellant's handwritten inventory.[2] Appellant did not object to the introduction of the inventory for this limited purpose, nor did he ask the court to take judicial notice of the inventory. He did not offer it for any purpose or as a

---

[2] The Reporter's Record indicates that Appellant's handwritten inventory was marked in the court's file as Petitioner's Exhibit #2. However, the document does not appear in the exhibits attached to the Reporter's Record. Appellant's inventory does appear in the record.

2

summary of his testimony.   In Appellee's sworn First Amended Inventory & Appraisement, she asserted that all other property owned by the parties at the time of the divorce was community property and adopted that inventory as a summary of her testimony at trial.

Appellee further testified that Appellant's mother passed away in 2008 and that Appellant received a substantial estate from her, consisting primarily of 587.210 acres of real property in Jack County which had producing mineral interests.   Appellee stipulated that Appellant owned two vehicles and a boat prior to the marriage and had inherited approximately $28,000.00 in jewelry, cemetery plots, and vehicles during the course of the marriage.   Appellee testified that she was not aware of any other property Appellant may have inherited.   She also testified that Appellant did not share information about their finances, that she had no idea "what he did with the money that we had" and that she did not know where their Frost Bank accounts came from. Appellee testified that she only discovered she was a joint owner of a Frost Bank account when Appellant instructed her to withdraw money from that account for Appellant's bail.   Despite persistent questioning at trial, Appellee refused to agree or confirm that Appellant had inherited various funds under his control and testified that she had reason to doubt Appellant's claim of separate property.

Evidence was introduced showing that Appellant did business under the assumed name "Ellis Properties," operating this business both under the assumed name and as the general partner, with Appellant owning 99% and his daughter owning 1%.   Appellee testified that Appellant "inherited the name," as opposed to inheriting a pre-existing business entity.   Appellant received $183,044.00 in income from Ellis Properties from the sale of stock, shown on a 2009 I.R.S. Form K-1.   The same 2009 tax returns indicate Appellant's occupation as "investments."

3

Evidence of ownership and the value of financial assets held by the parties was presented and consisted of a 2010 statement for each such asset and each party's inventories, to the extent that Appellant's inventory was consistent with Appellee's. Evidence from trial also shows that Appellant's mother remained a joint account holder on three financial accounts: (1) Frost Bank checking account ending in #xxx8024, jointly held by Appellant and Appellee; (2) Frost Bank money market account ending in #xxx5750, held jointly by Appellant and Appellee; and (3) Chase Bank savings account ending in #xxx4134, held in the name of Ellis Properties, Appellant, and Appellant's mother.[3] Three additional accounts were held in the name of Ellis Properties: accounts ending in #xxx8105 (Bank of America); #xxx1543 (Chase checking); and #xxx1307 (UBS brokerage). Two accounts were held in the name of Appellant d/b/a Ellis Properties: Frost Bank checking account #xxx7734 and money market account #xxx7742. All other financial accounts characterized by the trial court as community property are held in the name of either Appellant or Appellee, including a John Hancock annuity. No evidence was presented tracing the funds in any of these accounts to a separate source.

On November 9, 2010, the trial court rendered judgment granting the divorce and determining the property division between the parties.[4] The Final Decree of Divorce was entered on March 17, 2011. Appellant filed a Motion for New Trial on April 15, 2011; a Request for Findings of Fact and Conclusions of Law, on March 25, 2011; and a Notice of Past Due Findings of Fact and Conclusions of Law on April 26, 2011. Appellant timely filed his appeal.

On August 31, 2011, this Court ordered the trial court to prepare and file Findings of Fact

---

[3] No evidence was presented that Appellant's mother or her estate owned Ellis Properties or that any funds in its accounts belonged to her or her estate.

[4] Custody and support for the minor child of the parties was an issue in the dissolution of the marriage, however no issues relating to the trial court's custody and support determinations have been raised in this appeal.

4

and Conclusions of Law. Appellee filed Proposed Findings of Fact and Conclusions of Law. The record does not indicate whether Appellant filed his own Proposed Findings of Fact and Conclusions of Law, or whether Appellant objected to Appellee's proposed findings. The trial court adopted Appellee's proposed findings in the Findings of Fact and Conclusions of Law issued by the trial court on September 30, 2011.

## DISCUSSION

### Objections to Findings of Fact and Conclusions of Law

Appellant's first issue relates to the Findings of Fact and Conclusions of Law issued by the trial court.[5] Appellant's second issue is that the trial court abused its discretion by denying Appellant's motion to compel and allowing into evidence Appellee's unsworn supplemental interrogatories. This issue is directly related to Appellant's objection to Finding of Fact #19 and Conclusion of Law #4. Appellant's objection to Conclusion of Law #6 directly relates to his third issue. Appellant's fifth issue is that the trial court abused its discretion in not determining that clear and convincing evidence was presented to support Appellant's assertion of community property and involves the same property listed in Appellant's objection to Finding of Fact #11. We address these issues together, as the arguments are overlapping and interrelated.

Appellant makes a two-prong argument. First, that the trial court "still has not provided Appellant with **the court's** Findings of Facts [sic] and Conclusions of Law," and such failure resulted in harm to Appellant. [Emphasis in orig.]. Second, that certain Findings of Fact and Conclusions of Law are not supported by the record.

Appellant does direct this Court to any authority to support his first argument. That argument appears to be that the trial court was required to produce its own separate, independent,

---

[5] Appellant initially argued that the trial court's failure to issue findings and conclusions caused him harm.

5

findings of fact and conclusions of law and should not have adopted those submitted by Appellee. There is no question that the trial court, upon request, was required to issue findings of fact and conclusions of law. TEX.R.CIV.P. 296. *See Murray v. Murray*, 276 S.W.3d 138, 143 (Tex.App.--Fort Worth 2008, pet. dism'd). However, the trial court has the discretion to prepare and file findings in support of its judgment as it sees fit. *See Donalson v. Horton*, 256 S.W.2d 693, 696-97 (Tex.Civ.App.--Amarillo 1952, writ ref'd. n.r.e.). Certainly, the Texas Rules of Civil Procedure do not prohibit the trial court from adopting a party's proposed findings. TEX.R.CIV.P. 296. Further, as the *Donalson* court noted, the trial court is not limited to "such specific findings as may be requested by the losing party." *Donalson*, 256 S.W.2d at 697; *see also Lifshutz v. Lifshutz*, 61 S.W.3d 511, 515-16 (Tex.App.--San Antonio 2001, pet. denied) (overruling Appellant's objection to the trial courts failure to adopt Appellant's proposed findings of fact). We find no support for Appellant's argument.

Appellant next asserts that certain findings and conclusions are not supported by the record, specifically Findings of Fact # 11 and # 19, and Conclusions of Law # 4 and #6.

### Standards of review

Evidence is legally insufficient only when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999).[6] In determining whether evidence is legally

---

[6] *See also* Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361, 362-63 (1960).

sufficient to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact finder could and disregard evidence contrary to the finding unless a reasonable fact finder could not. *Cent. Ready Mix Concrete Co., Inc. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

When reviewing a challenge that the evidence is factually insufficient to support a finding, a reviewing court will set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, the court determines that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)(op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The trier of fact is the sole judge of the credibility of witnesses and the weight to be given to their testimony and a court of appeals must not merely substitute its judgment for that of the trier of fact while performing a review for factual sufficiency. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

### Finding of Fact #11

Appellant first challenges the trial court's determination in Finding of Fact #11 that certain property is community property of the parties. A review of Finding of Fact #11 indicates that Appellant is not challenging the entirety of the finding, but only as it relates to nine financial accounts, Texas Christian University ("TCU") football season tickets, "Ellis Properties,"[7] and a number of gold Krugerrands.

Trial courts have broad discretion in dividing the marital estate, and we presume that the trial court exercised its discretion properly. *Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1981).

---

[7] Appellant does not claim this as separate property in his initial brief, but makes such an assertion in relation to his objection to the finding of fact.

It is well established that property possessed by either spouse at the dissolution of the marriage is presumed to be community property, and a party who seeks to assert the separate character of property must prove its separate character by clear and convincing evidence. TEX.FAM.CODE ANN. § 3.003 (West 2006).

To overcome the community property presumption, the challenging party must trace and clearly identify the property claimed as separate property. *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011); *Barnard v. Barnard*, 133 S.W.3d 782, 789-90 (Tex.App.--Fort Worth 2004, pet. denied). Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex.App.--Fort Worth 2004, no pet.). As noted by the Texas Supreme Court, "when the evidence shows that separate and community property have been so commingled as to defy resegregation and identification, the burden is not discharged and the statutory presumption that the entire mass is community controls its disposition." *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex. 1965). When the character of the property is in doubt, Texas courts have held in favor of the community estate. *Ellebracht v. Ellebracht*, 735 S.W.2d 658, 659 (Tex.App.--Austin 1987, no writ). This is not a divestiture of separate property, but a necessary classification of property as established by the presumption of community property. *Pearson*, 332 S.W.3d at 363.

A trial court's division of property may not be disturbed on appeal unless the complaining party demonstrates from the evidence in the record that the division was so unjust and unfair as to constitute an abuse of discretion. *Neyland v. Raymond*, 324 S.W.3d 646, 649 (Tex.App.--Fort Worth 2010, no pet.), *citing Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985).

8

Appellant argues that the trial court erred by not finding that there was clear and convincing evidence that these items were separate property. However, as the party attacking the characterization of the property, the burden of proof is on Appellant. *See Vannerson v. Vannerson*, 857 S.W.2d 659, 669-70 (Tex.App.--Houston [1st Dist.] 1993, writ deined). Here, the record does not indicate that Appellant overcame the presumption that the aforementioned items were community property. To begin, the evidence of the separate property in Finding of Fact #11 is primarily found in an attachment to Appellant's inventory, of which *Appellee* asked the court to take judicial notice. The attachment, labeled "Separate Property," indicates that the Krugerrands were both inherited and gifted from Appellant's parents. The same attachment states that the TCU season tickets are separate property, but does not indicate the source.[8] Both "Ellis Properties" and each of the financial accounts Appellant claims as separate property also appear on the attachment. Appellant asserts that these all were inherited property.

A sworn inventory is simply another form of testimony. *Viera v. Viera*, 331 S.W.3d 195, 207 (Tex.App.--El Paso 2011, no pet.). Such testimony must be supported by other evidence. *Viera*, 331 S.W.3d at 207; *see also Ganesan v. Vallabhaneni,* 96 S.W.3d 345, 354 (Tex.App.--Austin 2002, pet. denied)(where husband's testimony and exhibits offered into evidence failed to provide account numbers, statements of accounts, dates of transfers, amounts transferred into and from accounts, sources of funds, or any asset tracing, such evidence was insufficient to constitute clear and convincing evidence establishing the separate property

---

[8] Appellee indicated that the TCU tickets and Krugerrands were community property on her First Amended Inventory and Appraisement. On direct examination, Appellee testified that she wanted the TCU tickets and Krugerrands split "fifty-fifty," and that while there were coins in another safe deposit box, she was willing to let Appellant have those, unless they were Krugerrands, which she requested be divided. Appellee testified that she believed that she and Appellant had acquired the TCU tickets prior to the death of Appellant's mother because Appellant had once wanted to sell the tickets and the tickets were in Appellant's and Appellee's possession. Appellee testified that she did not believe the season tickets were inherited. Regarding the Krugerrands, Appellee testified that Appellant owned Krugerrands prior to the death of his father but was unsure of the number owned or whether Appellant inherited any from his father. No further testimony was elicited relating to tracing the TCU tickets or the Krugerrands.

character of husband's accounts or to rebut the presumed community-property character of the account); *Osorno v. Osorno*, 76 S.W.3d 509, 512 (Tex.App.--Houston [14th Dist.] 2002, no pet.)(in the absence of deposit slips and bank records tracing the source of the funds, husband's testimony was insufficient to overcome the community property presumption); *compare Zagorski v. Zagorski*, 116 S.W.3d 309, 316-17 (Tex.App.--Houston [14th Dist.] 2003, pet. denied)(op. on reh'g)(husband called three witnesses who testified regarding the existence of husband's bank account prior to marriage and identified the source of funds therein, and husband presented documentary evidence concerning the account, thereby establishing that the account funds were his separate property); *Newland v. Newland*, 529 S.W.2d 105, 107-09 (Tex.Civ.App.--Fort Worth 1975, writ dism'd)(because husband's testimony was corroborated by bank records and documentary evidence, husband established that funds in account were his separate property).

Apart from the attachment to the inventory and a brief mention of "gold coins" held in a Frost Bank safe deposit box, there is no evidence indicating that the Krugerrands were inherited by Appellant. There is no attempt in the inventory to trace the TCU tickets. Appellee's testimony at trial indicates that Krugerrands and the TCU tickets may have been acquired during the course of the marriage. There is no clear and convincing evidence to support a finding that they are separate property.

Frost Bank account #xxx8784, John Hancock account #xxx5968, UBS Bank account #xxx4578, and Chase Bank account #xxx1234, are listed in Appellant's name only. Frost Bank account #xxx7742, is in the name of Appellant, d/b/a Ellis Properties. Bank of America account #xxx8105 and Chase Bank account #xxx1543 are in in the name of Ellis Properties. Chase Bank account #xxx4134 is in the name of Appellant, Ellis Properties, and Appellant's mother.

10

However, there was no evidence offered indicating the source of funds, dates of transfers, statements of accounts, or of any asset tracing by Appellant in relation to any of these accounts. Frost Bank money market account #xxx5750, is held in the names of Appellant, Appellee, and Appellant's mother. Again, there is no clear and convincing evidence that this is anything other than community property, particularly in light of its status as a joint account. *Tarver*, 394 S.W.2d at 783; *Ellebracht*, 735 S.W.2d at 659.

Appellee introduced evidence that the name "Ellis Properties" is an assumed name, issued by the Tarrant County Clerk in 2009 to Appellant as an individual. Appellee testified regarding Ellis Properties, indicating that Appellant may have inherited the name of the business. However the burden is not on Appellee to *disprove* community property: the burden is on Appellant to prove, by clear and convincing evidence, that the property was actually his separate property. No evidence was introduced to indicate that the name "Ellis Properties" was subject to probate or passed to Appellant via will or estate succession. There is no clear and convincing evidence that the assumed name was inherited and therefore separate property. *Pearson*, 332 S.W.3d at 363; *Ellebracht*, 735 S.W.2d at 659.

Moreover, Appellant has not met his burden to show by clear and convincing evidence that any of the challenged items listed in Finding of Fact #11 are anything other than community property. The factual evidence presented does not establish that the property was separate property, *see Uniroyal Goodrich Tire Co.*, 977 S.W.2d at 334, and the evidence is legally sufficient to support the trial court's findings. *City of Keller*, 168 S.W.3d at 827. The trial court did not abuse its discretion in finding this property to be community property. Appellant's fifth issue is overruled.

11

**Finding of Fact # 19 and Conclusion of Law # 4**

Appellant objects to Finding of Fact #19, where the trial court found that Appellee signed and swore to the original of her answers to interrogatories on September 20, 2010 and that the original was retained by Appellee's counsel during the pendency of the case. The court also found that Appellee served the interrogatories on Appellant in the form of an unsworn copy and made the corrective information known to Appellant in writing. The court found that in either event, Appellee cured the absence of a signature on the copy immediately after the omission was called to her attention. Conclusion of Law #4 follows the structure of Finding of Fact #19, adding that Appellee signed her supplemental interrogatories, as required by the Texas Rules of Civil Procedure 197.2(d); that such copy was retained by her counsel pursuant to Rule 191.4(d); that the answers were served in accordance with Rule 193.5(a)(2); and that any omission was cured by providing the signed and sworn original, in accordance with Rule 191.3(d).

Appellant objects to both the finding and conclusion on the basis that the record does not support either, and in his second objection, that the trial court abused its discretion by denying Appellant's motion to compel and admitting the interrogatories into evidence.

Prior to the start of the bench trial, the trial court conducted a hearing on two matters: a *de novo* review of Appellee's motion to compel, and Appellant's motion to compel discovery and for sanctions. Appellant argued that the supplemental interrogatories filed by Appellee were not sworn and therefore were subject to sanctions. In response to the court's inquiry of what counsel for Appellant wanted the court to compel, Appellant asked that Appellee be made to "swear to the interrogatories." During the hearing, Appellee's counsel testified that she must have sent unsigned copies to Appellant's counsel on September 20, 2011 and showed the sworn documents

12

to the court and to counsel for Appellant. The trial court stated that the documents were verified. Following this exchange, counsel for Appellant then argued that he did not have a chance to review the sworn documents and that they were late-filed discovery. The court noted that the documents were not late-filed.[9] Appellant then asked that these interrogatories be stricken, and the court proceeded to hold a good cause hearing. Appellee called her counsel's legal assistant, who testified that: (1) she had notarized Appellee's documents; and (2) the document faxed to Appellant's counsel was the same as the verified copy, without the verification. Appellee's counsel testified that the answers contained in the supplemental responses were the same as those submitted by Appellee on August 10, 2011, except for changes based on objections made by Appellant's counsel, which were reflected in the September 20th response. Appellant's counsel admitted that Appellee cured Appellant's objections in her response, but claimed that he never asked her to supplement the interrogatories. The court did ask what else Appellant wanted to compel, but Appellant advised there was nothing else.

We reject Appellant's argument that the responses were untimely.[10] Appellant was compelled to provide supplemental discovery and provided that discovery within thirty days before trial. Appellee supplemented her discovery based on Appellant's response and objections. We do not find merit in Appellant's argument that Appellee filed her supplemental discovery within thirty days before trial given that Appellee was unable to supplement based on Appellant's own omissions. Such a holding is supported by the unchallenged findings of fact in the case and the trial record, specifically Conclusion of Law #3 which states that Appellee met her burden of

---

[9] In unchallenged Findings of Fact, the court noted that the interrogatories were filed in response to Appellant's late-filed supplemental discovery and that Appellee's supplemental discovery was sent only three days after Appellant filed his supplement, with the entire supplemental discovery being precipitated by Appellee's motion to compel. *See* Findings of Fact #17 and #18.

[10] Appellant argues that by receiving these documents within thirty days before trial that Appellant was "ambushed" and "forced not to take the stand." We find no merit in this argument.

showing good cause to allow the late supplementation of her discovery and that such supplementation did not operate as unfair surprise or unfair prejudice to Appellant.

Appellant's argument that the court abused its discretion in relation to the unsworn interrogatories is without merit.   Pursuant to the request of Appellant, the court conducted a good cause hearing and, based on the testimony of Appellee's counsel and her legal assistant, found that Appellee had verified the interrogatories and sent a copy of the same, without the verified signature, to counsel for Appellant.   Finding of Fact #19 is supported by the facts in the record, and Conclusion of Law #4 correctly applies the law to those facts.   *See Uniroyal Goodrich Tire Co.*, 977 S.W.2d at 334; *City of Keller*, 168 S.W.3d at 827.   The omission of a signature on the documents sent to Appellant was a clerical error.   That error was remedied and the court found the error to be harmless.   *See* Tex.R.Civ.P. 191.3(d)("[I]f a request, notice, response, or objection is not signed, it must be stricken *unless it is signed promptly after the omission is called to the attention* of the party making the request, notice, response, or objection.")[Emphasis added].   *C.f. Minyard v. Southern Pipe & Supply Co., Inc.*, 563 S.W.2d 332, 333 (Tex.Civ.App.--Dallas 1978, writ ref'd n.r.e.)("Mere clerical omissions which do not obscure meaning will not invalidate an affidavit.").

The trial court did not abuse its discretion in overruling Appellant's motion to compel on this issue.   Appellant's second issue and his objections to Finding of Fact #19 and Conclusion of Law #4 are overruled.

### Conclusion of Law #6

As part of the hearing on the motion to compel, Appellant's counsel argued that Appellee refused to respond to Appellant's Interrogatories 34 and 35.[11]   Interrogatory 34 is a request for

---

[11] The items were actually part of a request for production of documents, not interrogatories, as indicated in the exhibit

14

production of documents, seeking "[a]ny documents you may seek to introduce into evidence at trial of this lawsuit." Interrogatory 35 seeks "[a]ll documents which constitute or contain matter(s) relevant to the subject matter of this lawsuit." In response, Appellee produced certain documents but objected that: "[t[his request lacks reasonable particularity and invades attorney work-product." At the hearing, the trial court sustained Appellee's objections without specifying the grounds it relied upon. In Conclusion of Law #6, the court noted that the requests for production lacked particularity and sustained the objections on that basis. Appellant argues that the information was not privileged. Because we find that the court did not abuse its discretion by denying the discovery requests, we do not address the issue of privilege.

Trial court's rulings on discovery matters are reviewed for an abuse of discretion. *Miller v. Kennedy, Minshew, P.C.*, 142 S.W.3d 325, 348-49 (Tex.App--Fort Worth 2003, pet. denied).

Interrogatory 34 essentially asks Appellee to turn over her exhibit list in discovery. The trial court certainly did not abuse its discretion in sustaining Appellee's objection to this request, which could be considered duplicative or could be obtained from another source, as defined in Rule 192.4(a). Discovery may not be used as a fishing expedition. *K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431 (Tex. 1996)(orig. proceeding). The trial court was well within its discretion to deny this request. *See also Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (holding that abuse of discretion does not occur as long as some evidence of substantive and probative character supports trial court's decision).

Interrogatory 35 is similar to the request in *Loftin v. Martin*, 776 S.W.2d 145 (Tex. 1989)(orig. proceeding). There, a request for production demanding "all notes, records, memoranda, documents and communications made that the carrier contends support its

---

introduced by Appellant. However, Appellant refers to them as interrogatories, both in his brief and at the hearing.

15

allegations" was vague, ambiguous, and overbroad. *Id*. at 148. Interrogatory 35 is of a similar nature and the trial court correctly applied the law in denying the interrogatory on the basis that it exceeded the scope of Rule 192.4 of the Rules of Civil Procedure. *See also Texas Tech Univ. Health Sciences Ctr. v. Schild,* 828 S.W.2d 502, 504 (Tex.App.--El Paso 1992, orig. proceeding) (holding that request for "each and every exhibit" that opposing counsel might "introduce as evidence" at the trial of the case sought attorney's work product and was overly broad).

The trial court did not abuse its discretion in disallowing these requests and the decision of the trial court is supported by the record. *Uniroyal Goodrich Co.*, 977 S.W.2d at 334; *City of Keller*, 168 S.W.3d at 827. Appellant's objection to Conclusion of Law #6 is overruled, as is Appellant's third issue.

The record supports the trial court's Findings of Fact and Conclusions of Law and the trial court did not abuse its discretion in relation to the objected-to findings and conclusions. We overrule Appellant's first, second, third, and fifth issues.

**Abuse of discretion in filing Amended Sworn Inventory outside of discovery period**

Appellant's fourth issue asserts that the trial court erred by allowing Appellee to file an Amended Sworn Inventory outside of the discovery period, in violation of the local rules of the trial court.

At the start of the actual trial, the parties exchanged proposed exhibits. Appellee offered her first exhibit, Appellee's First Amended Inventory and Appraisement. Appellant objected and argued that the inventory was untimely. Appellee's counsel noted that the amendment only incorporated changes based on Appellant's discovery which was compelled by Appellee as noted above, and updated balances with current figures. Appellant continued to object and the court

held an immediate good cause hearing. Appellee was called as a witness and testified that the inventory was prepared in response to the documents Appellant provided Appellee on September 17, 2011. Appellant questioned Appellee on the differences in the inventory, and Appellee testified that her counsel prepared the inventory in response to Appellant's documents. Appellee also testified that she relied on counsel as she did not have knowledge about what was required in an inventory. The court questioned counsel regarding whether the inventory was filed late because Appellee did not have the necessary documents. Appellant admitted this was true. The court then overruled Appellant's objection.

Appellant directs this Court to *Ismail v. Ismail*, 702 S.W.2d 216 (Tex.App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.) in support of his argument. The relevant section of the *Ismail* decision concerns sanctions imposed on one of the parties for failing to comply with a discovery order that included deadlines to file sworn inventories. Here, Appellant did not seek sanctions but instead objected to the introduction of the evidence.

The trial court conducted a good cause hearing and determined that Appellee's delay was caused by Appellant's delay in turning over documents to Appellee. The trial court was within its discretion to find good cause for the delay. *See Miller*, 142 S.W.3d at 348-49. The court's ruling is further supported by unchallenged conclusions of law and findings of fact. *See* Findings of Fact #16, #17, #18, and Conclusion of Law #3. The trial court did not abuse its discretion in overruling Appellant's objection. Appellant's fourth issue is overruled.

**Objection to tax rolls**

Appellant's sixth issue asserts error by the trial court in allowing tax rolls to be introduced as evidence of the value of the marital property and the use of that information to divide the marital

17

property.

At trial, Appellee introduced Exhibits 3 and 5 which were 2010 Tarrant County property value notices regarding the marital residence as well as the mineral interests in the property. Appellant objected on the basis that the documents constituted hearsay and that they could not be considered reliable evidence to determine the value of a home. The court overruled both objections. Appellant contends that such evidence is inadmissible hearsay and constitutes harmful error.

Whether the evidence presented is actually inadmissible hearsay is not a substantive issue,[12] given that the admission of these two pieces of evidence was, at most, harmless error. Exhibit 3 listed the value of the marital residence as $236,800.00. Both Appellee's sworn inventory and Appellant's sworn inventory put a value of $230,000.00 on the residence. There was a difference of approximately one thousand dollars between Appellant's and Appellee's estimations of equity. Exhibit 5 listed a value of $440.00 for the mineral interests. Appellee indicated a value of $970.00 for the mineral interests in Exhibit 5. Appellant did not indicate a value for them on his inventory, listing the value instead as "unknown." The court was within its

---

[12] Appellant refers us to a number of cases in support of his argument, several of which are distinguishable. Appellant cites to *Houston Lighting & Power Co. v. Fisher*, 559 S.W.2d 682, 686-87 (Tex.Civ.App.--Houston [14th Dist.] 1977, writ ref'd n.r.e.), which held that the tax value of a residence, determined without the participation of the landowner, is not evidence of value for purposes other than taxation. However, *Fisher* was issued prior to the 1982 adoption of the Texas Rules of Evidence. Since their introduction, the hearsay rule has provided "[i]nadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay." TEX.R.EVID. 802. Such evidence may still have probative value to the court. Appellant relies on *Housing Auth. of City of Dallas v. Brown*, 256 S.W.2d 656, 659 (Tex.Civ.App.--Dallas 1953, no writ), which held that error, if any, in refusing to admit evidence of tax value was harmless because "tax rolls do not reflect actual value," but an "approximate percentage of actual value." *Id.* The court in *Brown* however, does not state that the value as reflected on the tax rolls is of no probative value. Appellant also relies on *In re Marriage of Scott*, 117 S.W.3d 580, 585 (Tex.App.--Amarillo 2003, no pet.), where the wife in a divorce case presented evidence of the value of the marital home which was based on an appraisal from the county appraisal district. *Id.* at 585. The court of appeals held that the evidence was *factually* insufficient because the appraisal was over three years old and two experts testified that the value was much higher. *Id.* However, *Scott* does not stand for the proposition that tax appraisals are no evidence, i.e., legally insufficient evidence, of fair market value. *See Ouzenne v. Haynes*, No. 01-10-00112-CV, 2012 WL 1249420, *2 (Tex.App.--Houston [1st Dist.] Apr. 12, 2012, pet. denied)(mem. opin.)(noting same objections to *Brown* and *Scott* cases).

18

authority to use the values set out in the parties' inventories in determining the value of the marital home and the associated mineral interests. The trial court adopted the value of the home and mineral interests as set out in Appellee's sworn inventory. The values set out in Exhibits 3 and 5 do not appear to have been used in this calculation. Any error in admission of these exhibits does not meet the standards of the Rules of Appellate Procedure. *See* TEX.R.APP.P. 44.1(a)(1)("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . probably caused the rendition of an improper judgment . . . ."); *State v. Central Expressway Sign Associates*, 302 S.W.3d 866, 870 (Tex. 2009)(to warrant reversal on an evidentiary issue the complainant must demonstrate, in light of the entire record, that the error probably caused the rendition of an improper judgment); *Puentes v. Fannie Mae*, 350 S.W.3d 732, 737 (Tex.App.--El Paso 2011, pet. dism'd)(same). Appellant's sixth issue is overruled.[13]

### Late closing argument

Appellant's final issue is that the trial court erred by improperly considering a written closing argument made by Appellee following the close of the trial and, by doing so, violated Appellant's constitutional rights to a fair trial.

Following the close of the trial, Appellant asserts that the trial court was unduly influenced by a letter sent by Appellee's counsel to the court and faxed to Appellant on October 15, 2010. However, apart from being attached to Appellant's brief, the letter appears nowhere else in the record before this Court. Appellant never sought leave to supplement the record to include this document.

---

[13] Appellant's argument that as a result of the admission of this evidence that the entire case must be remanded to re-evaluate the entirety of the property division is without merit. The value of the marital home on both parties' inventories was less than the property value notice and the difference between the equity claimed by each party was less than $1,000.00.

An appellate record consists of the clerk's record and, when necessary, the reporter's record. TEX.R.APP.P. 34.1. The burden is on an Appellant to request and provide a complete record. *See* TEX.R.APP. P. 34.5(a), (b). Appellate courts cannot review documents not included in the record. Documents attached to a brief as an exhibit or an appendix, but not appearing in the record, cannot be considered on appellate review, save for limited exceptions not relevant here. *Fox v. Wardy*, 234 S.W.3d 30, 33 (Tex.App.--El Paso 2007, pet. dism'd w.o.j.); *Sabine Offshore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979) (stating that affidavits outside the record cannot be considered by an appellate court for any purpose other than determining its own jurisdiction). Appellant's seventh issue is not properly before this Court and is therefore overruled.

## CONCLUSION

Having overruled each of Appellant's issues, the judgment of the trial court is affirmed.

September 5, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

20