# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-25-00920-CV

---

**Lauren Loria, Appellant**

**v.**

**Derek Edward Loria, Appellee**

---

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-22-009443, THE HONORABLE JESSICA MANGRUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Lauren Loria appeals from the trial court's order granting Derek Loria's motion to modify the parent-child relationship following a bench trial. We will affirm.

## BACKGROUND

Lauren and Derek were married and share two daughters, Olivia, born in November 2018, and Emily, born in May 2020.[1] The couple's divorce was finalized on October 6, 2021, in Victoria County, Texas, where the girls were born and the family lived.[2] Under the divorce decree's terms, Derek and Lauren were named joint managing conservators,

---

[1] We refer to the children involved in this case by aliases. *See* Tex. Fam. Code § 109.002(d).

[2] The final judgment clarifies that the couple's divorce was rendered on October 6, 2021, even though the trial court did not sign the divorce decree until November 18, 2021. *See Guion v. Guion*, 597 S.W.3d 899, 904 n.3 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

and Lauren was awarded the exclusive right to designate the children's primary residence within a 200-mile radius of Victoria. The decree awarded Derek the standard possession terms during the school year and over holidays with a week-on-week-off possession schedule over the summer. And the decree gave the parties independent decision-making responsibilities on issues like medical, educational, and psychological and psychiatric decisions. Lauren moved to Travis County after the divorce and Derek stayed in Victoria.

Derek filed the underlying modification suit in Travis County on November 7, 2022. In his live pleading, he sought to be appointed the conservator with the right to designate the children's primary residence and the right to consent to the children's medical, dental, and surgical treatment involving invasive procedures. Derek requested that he serve as the tiebreaker for all other rights and duties, if he and Lauren cannot reach an agreement. Lauren filed a counterpetition, in which she sought to be appointed as sole managing conservator with all rights and duties, including the exclusive right to consent to medical, dental, and surgical treatment involving invasive procedures.

The suit proceeded to a bench trial at which Derek and Lauren were the only two witnesses to testify. Derek testified regarding the changes to his family and home life since the couple's divorce, including having two sons with two different women since the parties' divorce and marrying the youngest child's mother, who has two children (ages 16 and 20) from a previous relationship. Derek testified that the girls' relationship with his stepchildren is "really good" and that the girls "love" their two young half-brothers. He described their home in Victoria as "a fun-filled house" with "bunk beds," "two dogs," and "a trampoline in the back."

Derek explained that he filed the modification suit based on his concerns regarding Lauren's parenting decisions, including refusing to vaccinate the girls, not involving the girls in

2

extracurricular activities, being overly reliant on Lauren's parents to raise the girls, allowing the girls to access age-inappropriate content online, preventing the girls from speaking to him, and minimizing physically aggressive behavior by Emily. He expressed his concerns that the girls are "not flourishing" and summarized:

> I feel like the girls would be much better off having structure and that they would benefit from having community, their siblings with them, being seen medically whether that's with vaccinations or regular doctor appointments. I see some attitudes from each one that are probably typical of a little girl, but some of the things they say, I feel like come from lack of structure and stability at home with their mother. I feel like they shouldn't be raised by their grandparents. They should be raised by their parents. . . I think I can provide a more stable life for them to where they will be independent young women. I don't want them to feel like they need to be with somebody or marry somebody in order to purchase a home. Some comments they make makes me feel that's what they think. I see [Olivia] feeling like she needs makeup to be pretty. "No one would want to marry me if I don't wear make up." She's obsessed with wanting to put it on. She knows Netflix or Disney, she knows everything single movie, every single show. She has access to YouTube. She watches adult content like adult vloggers, not like children her age. [Emily] has exhibited violence at school [and] we've had [a] parent-teacher conference for it. When we were camping, she punched [Olivia] in the nose and caused her to bleed. My concerns are different with each one. I think I wouldn't have those concerns if they were in Victoria with me.

Derek gave more examples of Emily's behavior and its results, including a photo of Olivia's back with a large scratch on it, which Derek testified he noticed when the girls arrived for a weekend visit. He also testified that Emily's teacher "messaged me multiple times about [Emily] pushing kids, punching kids, scratching kids, screaming no." Derek said that after he learned about the behavior, Lauren asked him "to be the disciplinarian," to which he said, "just call me. . . . I can come to their school if they act this way. Please call me if this comes up." But he said he received "no calls." Derek said he was "calling twice a week and not getting in touch with them." And Derek said Lauren's response to Emily's behavior was that Emily is "just very loving" and "a sensory child" who "likes to touch." In her testimony, Lauren agreed that Emily is

3

"rougher" and "more sensory oriented" but characterized the girls' disputes as a "little bit of a sharing learning curve" since the children are close in age with similar interests. Lauren testified that she implements time outs and the children are "swatted on the behind if it's really egregious." And Lauren testified regarding her concern about a "gash" on Emily's foot that she sustained while in Derek's care. Lauren acknowledged that Derek told her that it was an accident at an indoor water park, but it "really concerned" her because it seemed like a "pretty significant gash that would have caused a lot of bleeding."

Much of the testimony focused on the parties' difficulties communicating with each other regarding coparenting decisions. Derek also testified about the difficulties he had communicating with the children when they were with Lauren. Though the parties' divorce decree gave him the right to electronically communicate with the children during certain times, Derek testified that "it's not every Wednesday or Sunday that I get that call." And when he does get to FaceTime with the girls, Derek testified that Lauren "starts a timer," and when the timer goes off, it is "time to get off the phone." He said that Lauren sets these time limits even though there is no time restriction in their order. An admitted exhibit showed a screenshot of Lauren's cell phone, in which Derek's contact was "NEX"—which Derek testified stands for "narcissistic ex"—followed by three "red flag" emojis. Derek said, "I don't think it's far before [Olivia] knows what that means." Lauren disagreed that this is what the children see when they talk to Derek on the phone and noted that "his Google contact has always been Derek Loria."

Derek also described an incident where he attempted to drop off roses to the girls' daycare for Valentine's Day, but when he called Lauren to let her know, Lauren "told me that I'm absolutely not allowed to do that" because "it would be disruptive to their learning environment." When Derek asked to see the girls that day, Derek said Lauren responded by saying "stop attacking

4

me," noting that this is "typical of the way that [Lauren] responds when you try to make any plans or suggestions to her." Derek testified that anytime he speaks about Lauren in front of the children, it is "very positive" but that Lauren has told the children that he is "crazy or abusive" and said that "dad's friend was a rapist." Lauren rejected this characterization, stating "I would never do that. I actually champion him weekly, daily."

Derek and Lauren's disagreements also affected decisions about the children's health care. For example, the children had not received any routine vaccinations. Lauren agreed that she "had a religious objection to vaccines" and was "opposed to vaccines." Lauren testified that when she and Derek were married, he shared these views and agreed with delaying the children's vaccinations. A text message from Lauren admitted into evidence showed that she told Derek that the children's pediatrician "is on board with the delayed vaccination schedule" and "commended me for my parenting decisions about vaccinations. Impressed even." Derek testified that he was "trusting and relying on [Lauren's] reports" but that during this litigation, he had reviewed the pediatrician's notes after the guardian ad litem spoke with the pediatrician and now understands that this was not the pediatrician's position. Derek and Lauren agreed to get the children vaccinated in April 2024, but when Derek made their appointments, Lauren cancelled them. Lauren testified that she has since "accepted" that "what's in the best interest of the children is to keep them on the agreed upon vaccination plans . . . that was to be followed per the pediatrician's recommendations." Additionally, the parties both discussed Olivia's eye condition and related vision-therapy exercises. Derek testified that he requires Olivia to do the exercises every night, but when the children are with Lauren, "they don't practice it regularly," such that Olivia's "vision has gotten worse since the last visit." Lauren disagreed, saying Olivia is "absolutely" doing her exercises. Derek also testified that he set an appointment for the girls to

5

see a child therapist in Victoria, and he had started his own therapy to assist with the process. While Lauren acknowledged that the guardian ad litem appointed earlier in this case recommended a child-play therapist, she testified that she had not made an appointment, though she has contacted the recommended therapist to "see about making an appointment."

Further, Derek testified that he "would like to see them in extracurricular activities," noting that while "they don't need to be filled with nonstop things to do, [] I would like to see them just flourish" and grow "mentally" and "physically" with "a life that's not limited to a tablet or after-school care." His concern was that the girls were lacking "individuality" and "a friend group" in Austin, where he said they spend most of their time with their grandparents, who live with Lauren and the girls. He testified that over the past couple of years, he had suggested specific activities for the girls to do in Austin and offered to pay for them; however, he said Lauren "makes comments about doing it, but they've never been in anything." Lauren was supportive of the children being in extracurricular activities but admitted that they were not currently involved in any. She said this was due to "logistics" "as a single mother trying to work out how that would work out with my full-time job" and her parents' full-time jobs.

Derek expressed his belief that it was in the children's best interests for him to have the exclusive right to designate the primary residence of the children. He testified that he "wholeheartedly" believes that he could "cultivate a better coparenting relationship" and "encourage a healthier relationship between [Lauren] and the girls if the girls were living primarily in [his] home." He discussed specific extracurriculars he researched for the children in Victoria, including a youth softball team that he coaches, dance, gymnastics, piano, and singing lessons, and he noted that "I would appreciate the individuality of letting them pick" what they are each interested in doing. He testified that he has taken the girls on playdates with other children in

6

Victoria and "most of those kids go to the same school they would be going to." And he affirmed that if the children lived primarily in Victoria, Lauren "would be involved in everything that goes on" and "would see the schedule of events they have and be welcome to go to all of them." He also agreed that if Lauren decided to move back to Victoria, he would be open to a "50-50 schedule," as "I would love as much time split between us as possible."

Lauren maintained that "I feel like I'm a very good and stable mother. I have provided consistency . . . [and] kept myself on a very straight and narrow path, which is just who I am, how I was raised." She also noted her "amazing support system within my home and within my community and the family members that live here in Austin." She also stated her belief that "things are always evolving in a positive way, I feel," regarding her coparenting relationship with Derek. In sum, Lauren testified that she believed it was in the children's best interests to be "with their mother, who has their sole focus and all of her resources and time and attention devoted to them, [who is] really able to take care of the day-to-day necessities."

The court admitted evidence offered by the parties, including their divorce decree, screenshots of text messages and email exchanges between them, pictures of the girls and their family members, and pictures of the girls' injuries discussed at trial. The trial court granted Derek's motion to modify and awarded him, among other things, the exclusive right to designate the primary residence of the children within a 200-mile radius of Victoria and the "tiebreaker" vote to consent to medical, dental, and surgical treatment involving invasive procedures, if the parties cannot agree. Lauren requested findings of fact and conclusions of law, which the trial court issued, and she filed a motion for new trial, which the trial court denied.

Lauren perfected this appeal. Though she was represented by counsel in the trial court, she appeals pro se.

7

## STANDARD OF REVIEW

We review trial court rulings on motions to modify conservatorship and motions to enforce a divorce decree for abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). "A trial court abuses its discretion when it acts 'without reference to any guiding rules or principles; or in other words, [when it acts] arbitrarily or unreasonably.'" *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021) (quoting *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)). Generally, a trial court does not abuse its discretion if the record contains some evidence of a substantive and probative character to support its decision on modification of conservatorship. *See Zeifman*, 212 S.W.3d at 589; *Johnson v. Kimbrough*, 681 S.W.3d 430, 439 (Tex. App.—Austin 2023, no pet.).

In family-law cases, the abuse-of-discretion standard overlaps with traditional standards for reviewing the sufficiency of the evidence. *See Zeifman*, 212 S.W.3d at 587–88. Consequently, legal and factual insufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Id.* at 587. To determine whether the trial court has abused its discretion, we engage in a two-pronged inquiry, analyzing whether (1) the trial court had sufficient evidence upon which to exercise its discretion and (2) the trial court erred in its application of that discretion. *Id.* at 588.

Traditional standards for legal and factual sufficiency come into play with the first question. *Id.* When conducting a legal-sufficiency review, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she

8

must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). "When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Id.* at 242. When conducting a factual-sufficiency review, we consider all the record evidence and set aside the trial court's order only if the evidence is so weak as to make the finding clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We defer to the factfinder's implicit determinations of credibility and weight to be given to the evidence. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Because the trial court acts as the factfinder in a bench trial, the trial court is the "sole judge of the credibility of the witnesses and the weight to be given their testimony." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

## DISCUSSION

Lauren raises five issues on appeal. In her first two issues, she contends that the trial court erred by looking to conduct that occurred after Derek filed his modification suit when, in her view, the operative timeframe was between the divorce decree and the date when Derek originally filed the modification suit. In her third issue, Lauren argues that the trial court's "verbatim adoption" of findings of fact and conclusions of law drafted by Derek's counsel renders its order "legally infirm and subject to heightened appellate scrutiny." In her fourth issue, Lauren maintains that the evidence is legally and factually insufficient to support the finding that Derek is the parent who is best able to encourage and facilitate a positive relationship between the children and the other parent. Finally, in her fifth issue, Lauren contends that the trial court failed to apply

9

the "stability and continuity presumption" and caused "irreparable harm to the children" "by ordering an abrupt custodial displacement."

*Relevant period for proving material and substantial change*

First, Lauren contends that under Texas Family Code section 156.101, the trial court could look only to conduct and conditions that occurred during the period between when the couple's divorce was finalized (November 18, 2021) and when Derek filed this modification suit (November 7, 2022). She maintains that the trial court erred in determining that a material and substantial change occurred by considering conduct after Derek filed his suit and that Derek therefore never met his burden to establish the statutory foundation for modification.

To support modification of an order regarding conservatorship, a trial court must find that the modification would be in the best interest of the child and, as applicable here, that the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the date of the rendition of the order. *Zeifman*, 212 S.W.3d at 589 (citing Tex. Fam. Code § 156.101). "To prove that a material change in circumstances has occurred, the petitioner must demonstrate what conditions existed at the time of the entry of the prior order as compared to the circumstances existing *at the time of the hearing on the motion to modify*." *Id.* (emphasis added). Thus, there is no support for Lauren's argument that the trial court could not look to circumstances beyond the date Derek filed his modification suit. Lauren does not contend that Derek failed to meet his burden to show a material and substantial change based on circumstances after Derek filed his suit.

Further, if a party files her own petition to modify in the trial court alleging a material and substantial change in circumstances, her allegation constitutes a judicial admission

10

that a material and substantial change occurred. *See Filla v. Filla*, No. 03-14-00502-CV, 2016 WL 4177236, at *4 (Tex. App.—Austin Aug. 5, 2016, pet. denied) (mem. op.) (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (assertions of fact in live pleadings and not pleaded in alternative constitute judicial admissions); *Coburn v. Moreland*, 433 S.W.3d 809, 829 (Tex. App.—Austin 2014, no pet.) (appellant's counterpetition alleging material and substantial change in circumstances constituted judicial admission)). Here, Lauren filed a counterpetition to modify in which she alleged that "[t]he familial, and emotional wellness of [Derek], a conservator of the children, have materially and substantially changed since the date of the rendition of the Order." She proceeded with this allegation at trial, where she sought to be awarded the exclusive right to make certain parenting decisions, including consenting to medical treatment and invasive procedures.

Lauren has not attempted to distinguish this statement in her counterpetition. Because she judicially admitted that "the circumstances of . . . a conservator . . . have materially and substantially changed since the date of the rendition of the order," she cannot on appeal challenge the sufficiency of the evidence supporting it. *See* Tex. Fam. Code § 156.101(a)(1)(A), *In re A.E.A.*, 406 S.W.3d 404, 410 (Tex. App.—Fort Worth 2013, no pet.); *see, e.g.*, *Filla*, 2016 WL 4177236, at *4.

We overrule Lauren's first and second issues.

*Adoption of proposed findings*

In her third issue, Lauren argues that the trial court's "verbatim adoption" of Derek's proposed findings of fact is "subject to heightened scrutiny to ensure they reflect the court's independent judgment and a correct application of the law." She contends that the findings

11

of fact "fail to perform the central statutory task required by § 156.101—identifying and analyzing a qualifying material and substantial change within the post-decree/pre-filing window." Lauren argues that the absence of this finding confirms that the findings of fact are "not the product of independent judicial reasoning."

We have already determined that Lauren's argument regarding section 156.101 is unavailing. To the extent that Lauren further argues that the trial court has an affirmative duty to independently evaluate proposed findings, "the Texas Rules of Civil Procedure do not prohibit the trial court from adopting a party's proposed findings." *Warriner v. Warriner*, 394 S.W.3d 240, 246 (Tex. App.—El Paso 2012, no pet.) (citing Tex. R. Civ. P. 296). Thus, Lauren's argument that the trial court's adoption of Derek's proposed findings was inherently erroneous is inapposite. *See id.*; *see, e.g.*, *Mustafa v. Asim*, No. 03-23-00018-CV, 2024 WL 5241054, at *8–9 (Tex. App.—Austin Dec. 20, 2024, no pet.) (mem. op.).

We overrule Lauren's third issue.

*Legal and factual sufficiency of the trial court's findings*

Next, Lauren argues that the evidence is legally and factually insufficient to support the trial court's finding that Derek will encourage a positive relationship between the children and her. Specifically, the trial court's finding states, "There was evidence that Father was the conservator best able to encourage and accept a positive relationship between the children and the other parent." Lauren maintains that evidence of Derek's "interference with electronic communication, withholding of information regarding a significant injury, and emotional distress associated with custodial exchanges" "undermines, rather than supports, a finding that [Derek] will foster a healthy co-parenting relationship."

12

However, the evidence at trial also established that Lauren had not permitted Derek to call or FaceTime the children during times established in their divorce decree and that she limited the duration of these conversations when they did occur by setting a timer. Derek's testimony and evidence of screenshots from Lauren's phone also established Derek's contact saved in her phone as "NEX," for "narcissistic ex," with three "red flag" emojis. And Derek testified that Lauren has told the children that he is "crazy or abusive" and that his "friend was a rapist."

On the other hand, Derek testified that he "wholeheartedly" believes that he could "cultivate a better coparenting relationship" and that when he speaks about Lauren in front of the children, it is "very positive." He also testified that he would ensure Lauren "would be involved in everything that goes on" in the children's lives in Victoria and that she would "be welcome to go to all of [their events]." Though Lauren contested the evidence that she spoke negatively about Derek in front of the girls, we defer to the trial court's implicit determinations of credibility and weight to be given to the evidence. *See Golden Eagle Archery*, 116 S.W.3d at 761. Based on the record before us, there was legally and factually sufficient evidence supporting the trial court's finding that Derek is the conservator who is best able to encourage a positive relationship between the children and other parent.

We overrule Lauren's fourth issue.

Finally, Lauren argues that the trial court failed to apply "stability and continuity principles" set forth by the Texas Supreme Court in *Lenz v. Lenz*, 79 S.W.3d 10 (Tex. 2002). However, *Lenz* involved considerations at issue in a modification when the primary custodial parent sought to relocate beyond the geographic restrictions set in the parties' divorce decree. *Id.* at 16. Here, neither parent is seeking to relocate, let alone relocate beyond the 200-mile radius from Victoria established in the parties' divorce decree. Thus, the trial court did not err by

13

declining to address the *Lenz* factors in its findings of fact or conclusions of law. *See id.*; *In re A.N.G.*, --- S.W.3d ----, ----, No. 07-25-00156-CV, at \*3 (Tex. App.—Amarillo Jan. 28, 2026, no pet.) ("In the absence of Mother's challenge to the geographic restriction and no facts indicating a parental relocation, we find no abuse of discretion by the trial court in failing to address the *Lenz* factors in its findings of fact and conclusions of law.").

To the extent that Lauren challenges the trial court's modification to conservatorship such that Derek has the exclusive right to designate the primary residence of the children within a 200-mile radius of Victoria, sufficient evidence supports that this is in the children's best interests. Lauren argues that this modification "abruptly displaced the children from their established routine, primary caregiver since birth, and community" by "relocating them approximately 2.5 hours away." But the trial court's findings of fact affirmatively demonstrate that it considered the children's best interests based on the relevant factors listed in Family Code section 153.001(a) and applicable factors discussed in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Specifically, the trial court found:

a. Father would best meet the children's physical, psychological, and emotional needs.

b. The parties are unable to make joint decisions for the children, which affects their well-being. The provisions in the Final Decree allowing for independent decision-making led to conflict between the parties and inconsistent medical care for the children.

c. There was evidence that Mother cancelled medical appointments made by Father.

. . .

f. Mother testified that she had not enrolled the children in extracurriculars at the time of trial, but that she could have.

g. There was evidence that Mother had not enrolled the children in therapy.

14

h. There was evidence that Father sought out extracurricular activities and therapy providers for the children near his residence.

These unchallenged findings of fact are binding on this Court unless the contrary is established as a matter of law or there is no evidence to support the findings. *See McGalliard*, 722 S.W.2d at 696.

These findings of fact are supported by the record. Evidence at trial reflected Derek and Lauren's difficulties communicating about parenting decisions and disagreements regarding the children's medical and emotional needs. While both parents acknowledged the ad litem's recommendation that the children attend therapy, Lauren had not made the children an appointment but had only called to "see about making an appointment." On the other hand, Derek testified that he had set the girls up with a therapist appointment in Victoria. Similarly, Derek testified to the specific extracurricular activities that he had researched for the girls in Victoria, as well as specific extracurricular activities in Austin that he had previously encouraged Lauren to enroll the girls in and had offered to pay for her to do so. Lauren acknowledged these efforts and was supportive of the ideas, but she had not enrolled the girls in any activities. Further, the trial court heard Derek's testimony that he had relied on Lauren's reports that the girls' pediatrician was "on board" with "the delayed vaccination schedule" but had learned through this litigation that this report was inaccurate. And when the parties agreed to get the children vaccinated in April 2024, Lauren cancelled the appointments that Derek made to further avoid the vaccinations. The trial court also heard testimony regarding Olivia's eye condition, which requires vision-therapy exercises, and Derek's reports that "they don't practice it regularly" at Lauren's house, such that Olivia's "vision has gotten worse since the last visit."

In sum, the trial court heard evidence from both parties about their abilities to communicate regarding the children, care for the children, and meet the children's medical,

15

psychological, and emotional needs. And the parties' testimony demonstrated both parents' devotion to their children. *See generally Fuentes v. Jasso*, No. 08-03-00109-CV, 2004 WL 1078498, at \*3 (Tex. App.—El Paso May 13, 2004, no pet.) (mem. op.) (recognizing "painful reality" that when two "devoted parents" divorce, hard choices must be made regarding custody decisions). In determining which conservator will have the exclusive right to establish primary residence, the trial court is vested with broad discretion. *See Billisits v. Billisits*, No. 03-21-00358-CV, 2023 WL 2191330, at \*5 (Tex. App.—Austin Feb. 24, 2023, no pet.) (mem. op.) (citing *Dennis v. Smith*, 962 S.W.2d 67, 70 (Tex. App.—Houston [1st Dist.] 1997, pet. denied)). Accordingly, our job is not to second-guess the trial court's decision but instead to ensure that the trial court did not act unreasonably, arbitrarily, or without reference to guiding principles of family law in reaching its decision. *See Zeifman*, 212 S.W.3d at 587.

Having reviewed the evidence under the appropriate standards, we conclude that sufficient evidence supports the trial court's finding that it is in the children's best interests for Derek to have the exclusive right to determine the children's primary residence and thus the trial court did not abuse its discretion by awarding Derek this right. We overrule Lauren's fifth issue.

## CONCLUSION

We affirm the trial court's order.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Theofanis and Crump

Affirmed

Filed: May 7, 2026

16