THE TRAVELERS INDEMNITY COMPANY OF RHODE ISLAND (Now The Travelers Indemnity Company of Connecticut), Appellant,

v.

Lynn Edward STARKEY and Hazel Dean Starkey, Appellees.

No. 05–03–01531–CV.

Court of Appeals of Texas, Dallas.

Feb. 17, 2005.

Rehearing Overruled March 30, 2005.

Deanne C. Ayers, Julie B. Tebbets, Colleyville, for appellant.

Roger G. Williams, Wilson Williams Molberg & Mitchell, PC, Kenneth H. Molberg, Wilson, Williams & Molberg, P.C., Dallas, for appellees.

Before Justices O'NEILL, LANG and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

The Travelers Indemnity Company of Rhode Island (Now The Travelers Indemnity Company of Connecticut) appeals the trial court's judgment awarding death benefits to Lynn Edward Starkey and Hazel Dean Starkey under the now-repealed provisions of the Texas Workers' Compensation Act article 8306 section 8.[1] We affirm.

### I. Factual and Procedural Background

On February 8, 1984, Jonathan Starkey sustained injuries in a motor vehicle accident while in the course and scope of his employment rendering him a quadriplegia. Travelers paid Jonathan 919 weeks of workers' compensation indemnity benefits between the date of the injury and the date of his death seventeen years later on September 8, 2001. Jonathan also filed a third-party action against a party he alleged caused or contributed to his injuries. Travelers intervened in that action. The parties in the third-party action, including Travelers, reached a settlement, the terms of which are at issue in this appeal.

Following Jonathan's death, his parents, Lynn and Hazel Starkey, sought death benefits under the now-repealed Texas Workers' Compensation Act article 8306 section 8.[2] The Texas Workers' Compensa-

---

1. This lawsuit arose under the now-repealed provisions of the Texas Workers' Compensation Act, Tex.Rev.Civ. Stat. Ann. art. 8306–8309f, now codified in the Texas Labor Code sections 401.001–506.001.

2. When death resulted from a work-related injury, the then-current provision of the workers' compensation statute entitled the injured worker's legal beneficiaries to weekly benefits for a period of 360 weeks. Act approved March 28, 1917, 35th Leg., R.S., ch. 105, § 8, 1917 Tex. Gen. Laws 269, 273, *amended by* Act approved April 3, 1923, 38th Leg., R.S., ch.177 § B, 1923 Tex. Gen. Laws 384, 385,

*amended by* Act approved May 29, 1947, 50th Leg., R.S., ch. 307, § 1, 1947 Tex. Gen. Laws 521, 522, *amended by* Act of May 23, 1957, 55th Leg., R.S., ch. 397, § 1, 1957 Tex. Gen, Laws 1186, 1188, *amended by* Act of March 6, 1969, 61st Leg., R.S., ch. 18, § 2, 1969 Tex. Gen. Laws 48, *amended by* Act of May 10, 1973, 63rd Leg., R.S., ch. 88, § 4, 1973 Tex. Gen. Laws 187, 188–89 (subsequent amendments omitted), *repealed by* Act of December 11, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7), 1989 Tex. Gen. Laws 114, 114–15 (formerly found at Tex.Rev.Civ. Stat. Ann. art. 8306 § 8 (Vernon 1967)).

tion Commission denied their claim, and the Starkeys appealed to the district court. The primary issue in the district court was whether Travelers was entitled to deduct the 919 weeks already paid to Jonathan from the 360 weeks claimed by the Starkeys.[3] If so, this credit would eliminate any recovery by the Starkeys. The parties waived a jury and submitted their issues to the trial court. At trial, the primary issue was the interpretation of one page of the third-party settlement agreement, which the parties stipulated as plaintiffs' exhibit one. The Starkeys argued that Travelers waived any credit to which it may have been entitled under section 8b by signing this document; Travelers argued it did not. The trial court rendered judgment for the Starkeys against Travelers and entered findings of fact and conclusions of law, from which Travelers appeals.

## II. The Issues

Travelers raises four issues with multiple subparts. Travelers initially argues the Starkeys' cause of action never existed because Travelers paid Jonathan more than 360 weeks of benefits prior to his death which eliminated any claim the Starkeys had to death benefits. Travelers next challenges the sufficiency of the evidence to support the trial court's judgment and findings of fact and conclusions of law because plaintiffs' exhibit one, the contractual provision in dispute, was never admitted into evidence. Alternatively, Travelers argues the trial court erred in interpreting plaintiffs' exhibit one as a waiver of the

credit to which Travelers was entitled under section 8b. Travelers also argues the trial court erred in striking the verification of its supplemental answer denying Jonathan's wage rate.

The Starkeys respond that plaintiffs' exhibit one was admitted and that Travelers' issues are not subject to review because there is an incomplete record on appeal. Alternatively, the Starkeys argue that Travelers contractually waived any right to credit under section 8b, the evidence is legally and factually sufficient to support the trial court's findings, and the trial court did not err in striking Travelers' verification.

## III. Sufficiency of the Record

In its first three issues, Travelers challenges the sufficiency of the evidence to support the trial court's judgment and findings of fact and conclusions of law because plaintiffs' exhibit one—the sole evidence relied on by the trial court in rendering its findings of fact and conclusions of law—was never admitted into evidence. As a result, we must initially determine whether this exhibit was admitted and whether we have a complete record on appeal.

### A. Was Plaintiffs' Exhibit One Admitted?

 The parties stipulated to plaintiffs' exhibit one in open court on the record. A stipulation is "an agreement, admission, or concession made in a judicial

---

3. Section 8b provided that when death occurred "as a result of the injury after a period of total or partial incapacity, for which compensation has been paid, the period of incapacity shall be deducted from the total period of compensation and the benefits paid thereunder from the maximum allowed for the death." Act approved March 28, 1917, 35th Leg., R.S., ch. 103, § 1, 1917 Tex. Gen Laws 269, 274, *amended by* Act of May 5, 1983, 68th Leg., R.S., ch. 132, § 1, 1983 Tex. Gen. Laws 615, 615 (subsequent amendments omitted), *repealed by* Act of December 11, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7), 1989 Tex. Gen. Laws 114–15 (formerly found at Tex.Rev.Civ. Stat. Ann. art. 8306 § 8b (Vernon 1967)).

proceeding by the parties or their attorneys respecting some matter incident thereto." *Shepherd v. Ledford,* 962 S.W.2d 28, 33 (Tex.1998) (citing *Ortega–Carter v. American Int'l Adjustment Co.,* 834 S.W.2d 439, 441–42 (Tex.App.-Dallas 1992, writ denied)). To be enforceable, the stipulation must be in writing, signed, and filed as part of the record, or made in open court and entered of record. TEX.R. CIV. P. 11. Stipulations are binding upon the parties, the trial court, and the reviewing court. *See Jim Sowell Const. Co., Inc. v. Dallas Cent. Appraisal Dist.,* 900 S.W.2d 82, 84 (Tex.App.-Dallas 1995, writ denied); *M.J.R.'s Fare of Dallas, Inc. v. Permit and License Appeal Bd.,* 823 S.W.2d 327, 330–31 (Tex.App.-Dallas 1991, writ denied).

Travelers argues the stipulation relieved the Starkeys of the obligation to authenticate plaintiffs' exhibit one, but not to offer the exhibit into evidence. But many cases have held that evidence treated by the trial court and the parties as if it had been admitted is, for all practical purposes, admitted. *See, e.g., Sanchez v. Bexar County Sheriff's Dep't,* 134 S.W.3d 202, 203–04 (Tex.2004) (per curiam) (commission record relied on as evidence by parties and court should be considered by appellate court even though not formally admitted into evidence); *Texas Health Enters., Inc. v. Texas Dep't of Human Servs.,* 949 S.W.2d 313, 314 (Tex.1997) (per curiam) (appellate court ordered to file administrative record that parties and court treated as admitted evidence although not formally tendered as evidence); *Heberling v. State,* 834 S.W.2d 350, 355–56 (Tex.Crim.App. 1992) (exhibit placed before jury and referred to by witnesses sufficient to sustain verdict although not formally offered or admitted); *Pickering v. First Greenville Nat'l Bank,* 479 S.W.2d 76, 78 (Tex.Civ. App.-Dallas 1972, no writ) (exhibit that was marked, used and referred to by attorneys and considered by trial court in rendering its decision was in evidence); *Texas Dep't of Pub. Safety v. Latimer,* 939 S.W.2d 240, 242–43 (Tex.App.-Austin 1997, no writ) (trial court considered administrative record in making decision, both parties treated it as evidence, both referred to the record's contents, and no objection was made that administrative record had not been admitted).

The reporter's record clearly shows that plaintiffs' exhibit one was marked and that both parties treated the exhibit as if it had been admitted into evidence: attorneys for both parties referred to plaintiffs' exhibit one during the trial, they agreed its interpretation was one of two issues for the trial court to decide, plaintiffs' exhibit one was projected onto a screen for the benefit of the trial court, Travelers did not object to references to plaintiffs' exhibit one on the basis it was not in evidence, the parties discussed tendering to the trial court the entire settlement agreement under seal, Travelers did not object to plaintiffs' exhibit one in their objections to the proposed judgment or in their motion for new trial, and the trial court based its findings of fact and conclusions of law on this exhibit. We conclude that plaintiffs' exhibit one was, for all practical purposes, admitted.

### B. Standard of Review When Record is Incomplete

█ Plaintiffs' exhibit one is not contained in the appellate record.[4] Travelers

4. Travelers requested a reporter's record including "all exhibits introduced into evidence ....." When the record was filed, it did not contain plaintiffs' exhibit one. Travelers did not ask to supplement the record. Travelers subsequently filed its brief arguing primarily insufficiency of the evidence because plaintiffs' exhibit one was never admitted into evidence. The Starkeys requested an extension of time to file their brief to locate plaintiffs'

did not attempt to supplement the record, did not argue that plaintiffs' exhibit one has been lost or destroyed under Rule 34.6(f), and did not designate a partial reporter's record under Rule 34.6(c).[5] Tex.R.App. P. 34.6(f) and (c). Without plaintiffs' exhibit one, we have an incomplete record. However, the trial court quoted language from plaintiffs' exhibit one in its findings of fact. Although Travelers complains it is impossible to determine whether the language in the findings of fact is quoted correctly without the exhibit, when we are confronted with an incomplete record, we presume the evidence supports the trial court's findings of fact. *See Sandoval v. Commission for Lawyer Discipline,* 25 S.W.3d 720, 722 (Tex.App.-Houston [14th Dist.] 2000, writ denied) (because appellant did not file a complete record on appeal, the court presumes the omitted portions of the reporter's record support the judgment); *CMM Grain Co., Inc. v. Ozgunduz,* 991 S.W.2d 437, 439 (Tex.App.-Fort Worth 1999, no pet.); *J.B. Chadwick v. Glens Falls Ins. Co.,* 340 S.W.2d 501, 503 (Tex.Civ.App.-Waco, 1960, no writ). Because we have an incomplete record, we overrule Travelers' challenges to the sufficiency of the evidence to support the trial court's findings of fact. We overrule Travelers' second issue, subparts B and C, and its third issue, subpart A which deals with the trial court's findings of fact.

### IV. Challenge to the Existence of the Cause of Action

■ At trial, Travelers moved for directed verdict on the ground that the Starkeys' cause of action for death benefits under section 8 never came into existence because Travelers paid more than 360 weeks in benefits to Jonathan prior to his death. Travelers relied on *Gulf Casualty Company v. Hart,* 141 Tex. 642, 175 S.W.2d 73 (1943), where the court held that "[t]he employee having lived beyond 360 weeks from the date of injury, the compensation period under Section 8 had expired before his death and no cause of action ever came into existence, or now exists, in favor of the beneficiary." *Id.* at 645, 175 S.W.2d 73.

However, *Hart* is distinguishable. Unlike here, the parties in *Hart* did not dispute whether the workers' compensation carrier waived the section 8b credit for payments made prior to the injured worker's death. Jonathan Starkey was injured on February 8, 1984. The third-party settlement agreement was signed December 10, 1987, less than 360 weeks after the date of injury. We conclude the trial court did not abuse its discretion in denying Travelers' motion for directed verdict. We overrule Travelers' first issue, subpart B.

### V. Challenge to the Trial Court's Findings of Fact and Conclusions

exhibit one. Travelers responded that "Plaintiffs' Exhibit One is the sole document upon which the Trial Court Judge based his Findings of Fact and Conclusions of Law. However, a careful review of the Transcript and the Record confirms that while this document was discussed, it was never actually offered or admitted as evidence during the trial." We granted the extension and ordered the court reporter and the district clerk to file supplemental reporter's and clerk's records containing plaintiffs' exhibit one or certificates that they do not have possession of that document.

The court reporter advised this Court that plaintiffs' exhibit one was "stipulated to in open court" but was not given to the court reporter. The district clerk advised this Court that plaintiffs' exhibit one was not filed with the district clerk's office. Plaintiffs' exhibit one has not been provided to the Court.

5. Travelers' reply brief states, "Plaintiffs' Exhibit 1 is not lost ... [it] was not offered or admitted into evidence."

## of Law[6]

### A. Does the Contract Waive the Section 8b Credit?

Travelers challenges the legal sufficiency of the trial court's conclusion of law number two because plaintiffs' exhibit one was never admitted into evidence. We may review the trial court's conclusions of law de novo to determine their correctness. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002); *Richardson Indep. School Dist. v. G.E. Capital Corp.,* 58 S.W.3d 290, 293 (Tex. App.-Dallas 2001, no pet.). Conclusion of law number two states:

> 2. As a result of the contractual language cited above, the defendant is not entitled to an offset to or credit against the award to the plaintiffs for any compensation benefits it previously paid to or on behalf of Jonathan Starkey. The contract language waives or otherwise relinquishes the right, if any, that the defendant may have had in the absence of its agreement.

This conclusion is based on finding of fact number six, which quotes language from plaintiffs' exhibit one:

> 6. The third-party action was settled by and between the parties, including the defendant here. As a part of that agreement, and in return for consider-

ation, including a cash payment, Travelers agreed as follows:

> The above amounts paid to Travelers shall constitute full settlement, satisfaction, and accord of all claims, demands, rights and liens that Travelers has or may have, directly or derivatively, accrued or contingent, under Tex.Rev.Stat. Ann. art 8307(6a)[7], or otherwise, against . . . . the Starkeys, or any of them, in any way arising out of the Accident, the Action, or this settlement of the Action. None of the payments described in the Agreement shall in any way reduce, satisfy, or eliminate any obligation that Travelers has or may have to pay any future benefits to or on behalf of Jonathan Glynn Starkey. . . .

The parties do not claim this provision is ambiguous, and our primary duty is to ascertain the parties' intent as expressed within the provision's four corners. *See Anadarko Petroleum Corp. v. Thompson,* 94 S.W.3d 550, 554 (Tex.2002); *Luckel v. White,* 819 S.W.2d 459, 461 (Tex. 1991). We give terms not defined specifically in the contract their plain, ordinary and generally accepted meaning. *See DeWitt County Elec. Co-op., Inc. v. Parks,* 1 S.W.3d 96, 101 (Tex.1999). Also, we presume the parties intended every clause to

---

6. In its first issue, Travelers argues the evidence is legally and factually insufficient to support the trial court's judgment. In issues two and three, Travelers argues the evidence is legally and factually insufficient to support the trial court's findings of fact and conclusions of law. When a trial court separately files findings of fact and conclusions of law, these control over recitations in the judgment. Tex R. Civ. P. 299a; *Guridi v. Waller,* 98 S.W.3d 315 (Tex.App.-Houston [1st Dist.] 2003, no pet.). For this reason, we do not address Travelers' challenge to the judgment in its first issue, subpart C.

7. Article 8307 section 6a of the Texas Workers' Compensation Act provided a means by

which the workers' compensation carrier could recover benefits paid to the injured worker from liable third parties and be subrogated to any payments received by the injured worker. Act of March 28, 1917, 35th Leg., R.S., ch. 105, Part II § 6a, 1917 Tex. Gen. Laws 269, 285, *amended by* Act of May 10, 1973, 63rd Leg., R.S., ch. 88, § 10, 1973 Tex. Gen. Laws 187, 193 (subsequent amendments omitted), *repealed by* Act of December 11, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(10), 1989 Tex. Gen. Laws 114 (formerly found at Tex.Rev.Civ. Stat. Ann. art. 8307 § 6a (Vernon 1967)).

have some effect. *Heritage Resources, Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996); *Ogden v. Dickinson State Bank,* 662 S.W.2d 330, 331 (Tex.1983).

Travelers complains the trial court used parol evidence to interpret this provision as waiving the credit under section 8b but does not identify the portion of the record where the parol evidence is found. Travelers interprets this provision as waiving its right "to suspend Jonathan Starkey's benefits until the total amount, if any, of money he received from the third party settlement was exhausted as set forth in *Article 8307, § 6a*" but not as waiving the credit or offset under section 8b. It contends that had the parties intended to waive the credit under section 8b, they would have made a specific reference to it, as they did with section 6a. Because they did not, "it is presumed that the parties considered and rejected including *Article 8306, § 8b* as part of the document." We disagree.

This provision in the third-party settlement agreement waives Travelers' rights under "art. 8307(6a), *or otherwise,* against .... the Starkeys." (emphasis added). "Otherwise" means "in a different way or manner" or "under different circumstances." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1598 (1981). This language does not limit the scope of the term "otherwise." Accordingly, we interpret this provision to mean that Travelers waived its rights under article 8307 section 6a and any other statute or provision by which Travelers may have had a claim against the Starkeys. For this reason, the trial court did not err in reaching conclusion of law number two. We overrule Travelers' second issue, subpart A.

## B. Did the Trial Court Err in its Award to the Starkeys?

In its third issue, Travelers argues the trial court erred in reaching conclusions of law numbers three, four and five in which the trial court awarded benefits, attorneys' fees, interest and costs to the Starkeys because there is no evidence to support the findings of fact from which these conclusions were drawn. Travelers also argues that the issue of wage rate, upon which the benefits were calculated, was not before the trial court. We disagree. The parties stipulated that one of the two issues before the trial court was the average weekly wage applicable to the benefits sought by the Starkeys. For the reasons set forth under VI below, the evidence of weekly wage rate supports the trial court's findings of fact numbers eight and nine in which the court determined that Jonathan's average weekly wage produced a weekly compensation rate of $189. Conclusion of law number three is based on a mathematical calculation of the weekly benefits awarded to the Starkeys multiplied by the average weekly rate applicable to Jonathan. *See* Act approved March 28, 1917, 35th Leg., R.S., ch. 103 § 1 (repealed 1989). We conclude the trial court did not err in awarding benefits to the Starkeys.

In conclusions of law numbers four and five, the trial court awarded the Starkeys attorneys' fees in the amount of twenty-five percent of the judgment, plus interests and costs "as allowed by law." Article 8306 section 7d authorized the trial court to award attorneys' fees up to twenty-five percent.[8] It was not error, there-

---

8. Act approved March 28, 1917, 35th Leg., R.S., ch. 105, Part I § 7d, 1917 Tex. Gen. Laws 269, 273, *amended by* Act of April 28, 1937, 45th Leg., R.S., ch. 261 § 1, 1937 Tex. Gen. Laws 535, 535–36, *amended by* Act of May 23, 1957, 55th Leg., R.S., ch. 397 § 1, 1957 Tex. Gen. Laws 1186, 1188, *amended by* Act of May 12, 1959, 56th Leg., R.S., ch. 355, § 2, 1959 Tex. Gen. Laws 778, 780, *amended by* Act of March 6,1969, 61st Leg., R.S., ch.

fore, for the trial court to award attorneys' fees to the Starkeys.

■ We also conclude it was not error for the trial court to award postjudgment interest and costs. Travelers cites no authority for its argument that the award of postjudgment interest and costs was error. The successful party in the trial court is entitled to postjudgment interest. *See* TEX. FIN.CODE ANN. § 304.005 (Vernon Supp.2004–05), and lawsuit costs are awarded to the successful party against its adversary. TEX.R. CIV. P. 131. The trial court did not err by awarding postjudgment interest and costs to the Starkeys.

For these reasons, we overrule Travelers' third issue, subpart A which deals with the trial court's conclusions of law.

## VI. Did the Trial Court Err in Striking Travelers' Verification?

■ In its fourth issue, Travelers argues the trial court abused its discretion in striking Travelers' verification to its supplemental answer in which it denied Jonathan's wage rate. Texas Rule of Civil Procedure 93(13)(h) provides that in the appeal of a workers' compensation case, wage rate is presumed true as pleaded unless denied by affidavit. TEX.R. CIV. P. 93(13)(h). Denials under rule 93(13)(a) or (g) may be based on information and be-

lief, implying that other matters denied under rule 93(13) must be based on personal knowledge. *Id.* Travelers' verification was signed by its adjuster, who testified that he relied on the employer's first report of injury, provided by the employer, and the claim for death benefits, provided by the Starkeys, in preparing his affidavit wherein he denied Jonathan's wage rate. Travelers argues its adjuster's reliance on these two documents to file a sworn denial of Jonathan's wage rate is sufficient to constitute personal knowledge based on our opinion in *Commercial Insurance Company of Newark, New Jersey v. Lane,* 480 S.W.2d 781 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.).

However, in *Lane,* the court contemplated that appellant's workers' compensation carrier would have the same access to the employer's records as the employer and would investigate those records sufficiently to give the carrier personal knowledge of the wage rates. *Id.* at 783. In this case, however, Travelers has not shown that it conducted any investigation at all, but simply relied on two documents the adjuster reviewed. The adjuster testified he conducted no review of the employer's wage records in determining Jonathan's wage rate and did not know whether the wage rate included fringe benefits.[9] The adjuster did not know whether Jonathan or a similarly-situated employee had worked for 210 days prior to the injury and did not

---

18, § 7, 1969 Tex. Gen. Laws 48, 51–52 (subsequent amendments omitted), *repealed by* Act of December 11, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7), 1989 Tex. Gen. Laws 114, 114–15 (formerly found at TEX.REV.CIV. STAT. ANN. art. 8306 § 7d (Vernon 1967)).

9. The then-current definition of average weekly wage included "the market value of board, lodging, laundry, fuel and other advantage which can be estimated in money which the employee receives from the employer as a part of his remuneration." Act approved March 28, 1917, 35th Leg., R.S., ch. 105, § 8,

1917 Tex. Gen. Laws 269, 291, *amended by* Act of April 28, 1937, 45th Leg., R.S., ch. 262 § 1, 1937 Tex. Gen. Laws 537, *amended by* Act of April 21, 1943, 48th Leg., R.S., ch. 176, § 1, 1943 Tex. Gen. Laws 279, 279–80, *amended by* Act of May 12, 1959, 56th Leg., R.S., ch. 355, § 1, 1959 Tex. Gen. Laws 778, 779–80 (subsequent amendments omitted), *repealed by* Act of December 11, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(15), 1989 Tex. Gen. Laws 114 (formerly found at TEX.REV.CIV. STAT. ANN. art. 8309 § 1 (Vernon 1967)).

offer any basis for using the "just and fair" formula authorized by statute.[10] Indeed, the adjuster testified he did not conduct any investigation into what constituted a just and fair wage in Jonathan's case and that his affidavit was based only on the information from the employer's first report of injury and claim for death benefits.

■ But even if the trial court had erred in striking Travelers' verification, we conclude any error was harmless. After the trial court struck the verification, the Starkeys offered additional evidence of Jonathan's wage rate. Mr. Starkey testified that he was project manager and Jonathan was crew supervisor for the same employer. Mr. Starkey testified he was familiar with the wage rate of workers similar to Jonathan who had been employed for a year and that they made approximately $72 a day before fringe benefits. Also, Travelers offered as evidence at trial the claim for death benefits which stated Jonathan's weekly wage rate was $300. The parties stipulated that the maximum average weekly wage rate for workers' compensation purposes at the time was $189. Based on this evidence, Jonathan's average weekly wage exceeded the $189 maximum.[11]

Travelers argues that striking the verification precluded it from presenting evidence of the wage rate. But Travelers does not cite to references in the record, and we have found none, where it offered other evidence of Jonathan's wage rate and the trial court excluded it. Travelers does not argue or cite any authority that striking the verification was reasonably calculated to cause and probably did cause the rendition of an improper judgment or probably prevented it from properly presenting the case to this Court. Tex.R.App. P. 44.1(a). We conclude the trial court did not abuse its discretion in striking Travelers' verification of its supplemental answer. We overrule Travelers' fourth issue.

## VII. CONCLUSION

Having overruled Travelers' issues, we affirm the judgment of the trial court.

---

**10.** The average weekly wage was computed using one of the first two formulas found in the statute, which were based on the employee, or someone similarly situated, having been employed for at least 210 days. A "just and fair" formula could be used when "by reason of the shortness of time of the employment of the employee, or other employee engaged in the same class of work in the manner and for the length of time specified in the above Subsections 1 and 2, or other good and sufficient reasons, it is impracticable to compute the average weekly wages as above defined...." *Id.*

**11.** The weekly compensation rate for incapacity benefits was two-thirds of the average weekly wage as determined by statute, not to exceed the statutory maximum. Act of March 28, 1917, 35th Leg., R.S., ch. 105, § 10, 1917 Tex. Gen. Laws 269, 274, *amended by* Act of March 6, 1969, 61st Leg., R.S., ch. 18, § 3, 1969 Tex. Gen. Laws 48, *amended by* Act of May 3, 1973, 63rd Leg., R.S., ch. 88, § 5, 1963 Tex. Gen. Laws 187, 189, *amended by* Act of May 26, 1981, 67th Leg., R.S., ch. 861, § 1, 1981 Tex. Gen. Laws 3290 (subsequent amendments omitted), *repealed by* Act of December 11, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7), 1989 Tex. Gen. Laws 114 (formerly found at Tex.Rev.Civ. Stat. Ann. art. 8306 § 10 (Vernon 1967)). The average weekly wage was determined in one of three ways. The most common method was to multiply the average daily wage by 300 and divide by 52. *Id.*