**AFFIRM; and Opinion Filed January 17, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00916-CV

## IN THE INTEREST OF A.W.L., A CHILD

**On Appeal from the 330th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-15-03681**

## MEMORANDUM OPINION
Before Justices Lang-Miers, Fillmore, and Stoddart
Opinion by Justice Lang-Miers

This is an appeal involving a divorce and suit affecting the parent-child relationship and the appointment of a receiver. Appellant Man Lin argues that the trial court erred by appointing a receiver, ratifying the receiver's report, and granting the receiver judicial immunity and that there is not sufficient evidence to support the trial court's findings of fact and conclusions of law. We affirm.

### BACKGROUND

Appellee Wen Wu filed for divorce against Lin. Subsequently, Lin's attorney moved to withdraw as counsel "based on good cause in that there is an unreasonable financial burden and it is unreasonably difficult to represent" Lin. On February 11, 2016, the court concluded that "good cause has been shown" and permitted his lawyer to withdraw as counsel. The record does not reflect that Lin objected to the motion to withdraw. On the same day, the trial court ordered that,

if Lin failed to comply with an order compelling discovery, the court "shall order sanctions" at the next hearing, which the court scheduled to take place eleven days later. The sanctions could include "appointment of a receiver to enable information gathering, valuation, and advice to the court regarding the future profitability and appropriate disposition of the property of Sake Fish restaurant[.]" Also on February 11, 2016, after the hearing, Wu filed a motion for appointment of a receiver. On February 22, 2016, the trial court ordered appointment of a receiver, appellee Kevin Buchanan (Receiver), and in its findings stated that "Man Lin is in sole control of Dongfanghong LLC and Sake Fish and that these entities constitute the entirety of the marital estate[,]" "the value of the restaurant Sake Fish is being diminished by Man Lin's failure to account for cash or to make its monthly rent payments[,]" and unless a receiver "is appointed to immediately take charge and control over the management of Sake Fish there is a real danger that the community estate will suffer further irreparable loss, in excess of the losses already caused by" Lin's actions.

The court authorized the Receiver "forthwith to take any actions necessary to secure payments and to manage, control, and dispose of the property of MAN LIN including any entity in which MAN LIN controls and/or holds an interest in, whether direct, indirect or beneficial, which includes, but is not limited to, the following entities: Dongfanghong, LLC, d/b/a SAKE FISH." The court vested the Receiver with "powers necessary to manage, control, and dispose of the property of MAN LIN, including" (1) to "take control, custody, and possession of the assets of MAN LIN and DONGFANGHONG, LLC[,]" (2) to "take possession and control of the restaurant doing business as SAKE FISH and/or DONGFANGHONG, LLC to the exclusion of all others[,]" (3) to "exercise all powers and rights exercisable by MAN LIN in reference to the property described above," (4) to "hire and fire employees, consultants and professionals for the Restaurant[,]" and (5) to "perform all such other acts as necessary to preserve the assets of

Dongfanghong, LLC and Sake Fish Restaurant pursuant to Texas law."[1]  The record does not reflect that Lin objected to the appointment of the Receiver.

On March 31, 2016, William Chu entered his appearance as retained counsel for Lin.  And on April 19, 2016, the court signed a final decree of divorce in which the court approved the agreement of the parties as contained in the final decree.  The final agreed decree ordered that "the Receiver Kevin Buchanan shall be discharged and the court-ordered receivership is terminated as of the date of signing this decree."

On May 4, 2016, the Receiver filed his "Receiver's Report, Motion to Ratify Conduct of Receiver, Motion to Approve Receiver's Compensation, and Motion to Terminate Receivership" (Report).  The Report stated that Dongfanghong, LLC (LLC) operated Sake Fish restaurant at the time of the Receiver's appointment, the LLC was created before Lin and Wu married, and Lin held 100% of the membership interest in the LLC in his name.  The Report also stated that, after marriage, Lin entered into transactions in connection with the operation of Sake Fish in his own name rather than in the name of the LLC.  The Report stated that interviews and analysis of banking records "revealed that the individuals found working at" Sake Fish "were not employees of the LLC but rather members of a joint venture that included MAN LIN."  The Report stated that two to three "separate businesses" operated within "the premises of the Restaurant" that used a "joint venture cost sharing arrangement[.]"  The Report noted that one purported joint venture partner named Wei Heng Lu (Willy) claimed Lin owed him more than $14,000 in unremitted credit card receipts under a joint venture arrangement.  Lin did not dispute that he owed money to Willy.

---

[1] The order appointing the Receiver also granted the Receiver "authority to pay all expenses incurred by Dongfanghong LLC and Sake Fish in the course of business, to the extent determined necessary by Receiver or his agents[,]" "authority to hi[]re and employ servants, agents, employees, clerks, accountants, and other professionals and to purchase merchandise, inventory, materials, supplies, and services in connection with operating and conducting the business of the Restaurant, and to pay for them at the ordinary and usual rates and prices from the funds that may come into the Receiver's possession through the operating of the Restaurant."  The order also appointed the Receiver as attorney-in-fact for Lin.

The Report stated that the Receiver operated the restaurant for approximately three weeks and concluded that the restaurant was "hemorrhaging money" and was "not profitable." The Receiver determined that it was in the best interest of the parties and the minor child to shut down the restaurant's operations. In addition, the Receiver entered into a mutual release between "Willy and his entity" and Lin, individually as Lin's attorney in fact and as receiver for the LLC, for the release of all claims asserted by Willy, which—according to the Report—included the release of claims for credit card receipts owed to him. On behalf of Lin and the LLC, the Receiver also entered into a mutual release of claims and termination of the lease agreement with the restaurant's landlord, which—according to the Report—released a debt of more than $50,000 that Lin owed the landlord individually under the lease.

After a hearing, the trial court granted the motions to ratify the Receiver's conduct, to approve the Receiver's compensation, and to terminate the receivership. The court also ordered that all funds held by the LLC under control of the Receiver be applied to his compensation and that Lin pay all remaining fees and expenses incurred by the Receiver. The trial court terminated the receivership, discharged the Receiver, and released the Receiver from liability associated with the case or the receivership.[2]

Lin filed a notice of appeal challenging three orders: the order permitting withdrawal of his attorney, the order appointing the Receiver, and the order on the Receiver's Report, ratifying the conduct of the Receiver, approving the Receiver's compensation, and terminating the receivership. At Lin's request, the trial court made findings of fact and conclusions of law.

---

[2] The release excepted intentional torts, fraud, or criminal activity by the Receiver.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In his first issue, Lin argues that (1) the trial court "mechanically" adopted, "near[ly] verbatim," the proposed findings of fact and conclusions of law submitted by Wu and the Receiver and (2) several of the findings and conclusions are not supported by legally or factually sufficient evidence.

**Proposed Findings of Fact and Conclusions of Law**

Lin first argues that the trial court's "mechanical" adoption of the findings of fact and conclusions of law submitted by Wu and the Receiver harmed him and should be given little to no credibility.[3] Lin states that, although "Texas courts have not specifically addressed the issues of mechanical adoption of proposed findings and conclusions," the Fifth Circuit has "voiced its disapproval" of trial courts' "unconditional[] adopt[ion]" of findings and conclusions that one party submitted. *See Keystone Plastics, Inc. v. C & P Plastics, Inc.*, 506 F.2d 960, 962 (5th Cir. 1975).[4] But the standard under Texas law is different and controls here. *See Nu-Build & Assocs., Inc. v. Sooners Grp., L.P.*, No. 05-15-01303-CV, 2017 WL 4927076, at *1 (Tex. App.—Dallas Oct. 31, 2017, no pet.) (mem. op.) ("Nu-Build's first issue first asserts that the trial court improperly adopted Sooners' proposed findings of fact and conclusions of law; but this is not improper."); *Warriner v. Warriner*, 394 S.W.3d 240, 246 (Tex. App.—El Paso 2012, no pet.) (stating "the trial court has the discretion to prepare and file findings in support of its judgment as it sees fit" and "[c]ertainly, the Texas Rules of Civil Procedure do not prohibit the trial court from

---

[3] Lin also argues that, because there is no reporter's record for the hearing on the motion to withdraw or the motion for appointment of a receiver and because the motion to withdraw and the motion for appointment of a receiver were heard by an associate judge—and not by the district court judge who signed the findings and conclusions—"it is a reasonable conclusion" that the trial court "did not file its Findings and Conclusions based on the facts and evidence presented at the hearings" but instead "copied" Wu's and the Receiver's "ex post facto Proposed Findings and Conclusions[.]" He cites no authority for the proposition that the trial court erred by adopting the findings and conclusions in these circumstances. *See* TEX. R. APP. P. 38.1(i).

[4] Appellant cites one Texas case, *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 726 (Tex. App.—Corpus Christi 2006, pet. denied), for the proposition that deference to findings "is questionable when the trial court adopts near word-for-word findings of fact and conclusions of law." But *Villagomez* only says in dicta that the trial court "adopted, word-for-word, virtually all of the 67 proposed findings of fact and 14 proposed conclusions of law drafted and submitted by Rockwood." *Id.*

–5–

adopting a party's proposed findings"); *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 253 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (stating that, when the losing party requests findings of fact and conclusions of law, "the trial court, as a matter of practice, usually invites the prevailing party to prepare proposed findings and conclusions based upon its rulings"). We conclude that the trial court did not err by adopting the proposed findings of fact and conclusions of law submitted by Wu and the Receiver.

## Sufficiency of the Evidence

Also as part of his first issue, Lin argues that there is not legally or factually sufficient evidence to support certain findings of fact and conclusions of law made by the trial court.

### *Findings of Fact*

At the outset, we note that the appellate record does not contain a transcript of the hearing concerning the attorney's motion to withdraw as counsel or the hearing concerning the motion to appoint the Receiver. "[W]hen we are confronted with an incomplete record, we presume the evidence supports the trial court's findings of fact." *Travelers Indem. Co. of Rhode Island v. Starkey*, 157 S.W.3d 899, 905 (Tex. App.—Dallas 2005, pet. denied). Because we have an incomplete record, we overrule Lin's challenges to the sufficiency of the evidence to support the trial court's findings of fact concerning the attorney's withdrawal as counsel and the appointment of the Receiver.

Lin also challenges three findings of fact concerning the "Order Terminating Receivership, Ratifying, Approving Compensation."[5] We review the court's findings by the same standards used to review challenges to the sufficiency of the evidence to support jury findings. *McLeod v. Gyr*, 439 S.W.3d 639, 647 (Tex. App.—Dallas 2014, pet. denied). A legal sufficiency challenge to the findings of fact fails if there is more than a scintilla of evidence to support the findings. *Reisler v.*

---

[5] The record includes the transcript of the hearing concerning the termination of the receivership and ratification of the Receiver's actions.

*Reisler*, 439 S.W.3d 615, 620 (Tex. App.—Dallas 2014, no pet.). In conducting a factual sufficiency review, appellate courts may set aside the trial court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Id.* In evaluating the trial court's findings of fact, an appellate court must give substantial deference to the trial court's determination of the weight and credibility of the evidence. *Id.*

Lin argues that there is not sufficient evidence to support the following findings of fact:

1. All actions undertaken by the Receiver as set out in his report were within the scope of the authority delegated to him in the *Order Appointing Receiver* and in furtherance of the protection of the goal of preservation and protection of the property of the parties.

2. The Receiver exercised good faith and due care in discharging his duties.

Lin argues that there is not sufficient evidence supporting finding of fact number one because the Receiver "acted outside of the scope of the receivership[.]" Lin contends that "Sake Fish was actually a joint venture" and that the trial court did not have jurisdiction over the joint venture. He also argues that the order appointing the Receiver "did not specifically authorize the [R]eceiver to begin running the business for profit" but only gave him powers "over employees, services, and inventory, during the business operations, for when he took over." In addition, Lin argues that there is not sufficient evidence to support finding of fact number two because the Receiver did not exercise due care or good faith as the Receiver "took control over a dwindling business, where the owner lived in the restaurant, hired expensive operators, and then ran the business for three weekends at an everyday loss."

As discussed in more detail concerning issue three below and based on a review of the provisions of the order appointing the Receiver and the evidence in the record concerning the Receiver's actions, we conclude that there is sufficient evidence to support the trial court's finding that the Receiver acted within his authority as stated in the order, in furtherance of preserving and protecting the parties' property, and in good faith and with due care.

–7–

Lin also argues that there is not sufficient evidence supporting finding of fact number three, which states:

> 3. The facts asserted in the Receiver's Report regarding the actions taken by the receiver and the conduct of the Respondent were not disputed at the hearing. Specifically, that Sake Fish was insolvent and racking up debt rapidly in the individual name of MAN LIN.

Appellant argues that this finding "proclaims that [he] did not object at the hearing ratifying the receiver's conduct" and he contends that his attorney "did object to the conduct of the receiver and the court ratifying the report." But finding of fact number three does not concern whether appellant objected to the Receiver's conduct. Instead, it states that that the facts asserted in the Receiver's report concerning the Receiver's actions and Lin's conduct were not disputed—in particular that Sake Fish was insolvent and incurring further debts in Lin's name.

We overrule the second part of Lin's first issue that concerns the sufficiency of the evidence supporting the trial court's findings of fact.

### *Conclusion of Law*

Lin also challenges the trial court's conclusion of law number one concerning the "Order Terminating Receivership, Ratifying, Approving Compensation." We review the trial court's conclusions of law de novo to determine their correctness. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Travelers Indem. Co.*, 157 S.W.3d at 906. Conclusion of law number one concerning the order terminating the receivership states:

> 1. [Lin]'s oral objections to the appointment of the receiver are moot because [Lin] failed to raise them by interlocutory appeal and prior to entry of final judgment on April 19, 2016[.] *See Long v. Spencer*, 137 S.W.3d 923, 926, (Tex. App. Dallas 2004) [sic] (a person may appeal from an interlocutory order of a district court that appoints a receiver under TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(1); this right to appeal the order of receivership itself must be exercised within twenty

days afte[r] the receivership order is entered or it is waived citing *Sclafani v. Sclafani*, 870 S.W.2d 608, 611 (Tex. App.-Houston 1993, writ denied)[)].[6]

Lin argues that this conclusion is an incorrect statement of law and then states that "[a] violation of [his] right to due process is a proper basis to overturn the appointment of the receiver and order ratifying his conduct." But the three cases that Lin cites to support his argument are distinguishable. *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84–87 (1988) (holding that, where appellant did not receive valid service of process or notice of judgment, requirement to show meritorious defense to obtain grant of bill of review violated due process of law); *Mullane v. Cent. Hanover Bank & Tr.*, 339 U.S. 306, 314, 318–20 (1950) (holding notice by publication to known beneficiaries of trust fund whose whereabouts are known violated due process); *Ex Parte Davis*, 344 S.W.2d 153, 156–57 (Tex. 1961) (concluding deaf mute father held in contempt for failure to pay child support denied constitutional due process when afforded two days' notice of hearing, his appearance was under compulsion, he was not represented by counsel, and he was not advised of rights under statute or allowed to introduce additional evidence). Here, the findings of fact concerning the appointment of the Receiver—which we presume to be established by the evidence in the absence of a complete reporter's record—establish that Lin received notice of the hearing concerning the appointment of the Receiver, he did not appear at the hearing, and he raised no objection to the appointment of the Receiver prior to the entry of final judgment. In addition, the challenged conclusion of law does not concern Lin's due process rights, but rather concerns his failure to timely assert any objection to the appointment of the Receiver. *See In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003) (stating requirement to timely assert due process challenge). We overrule Lin's argument challenging the conclusion of law.

---

[6] In the trial court's findings of fact—which we presume to be established by the evidence based on the incomplete reporter's record before this Court—the court found that "[n]o objection, request for de novo hearing, or any other form of dispute was ever raised to this Court regarding the *Order Appointing Receiver* at any time prior to the final judgment being entered in this case."

We resolve Lin's first issue against him.

## WITHDRAWAL OF COUNSEL

In his second issue, Lin argues that the trial court violated his right to due process when it allowed Lin's first attorney to withdraw "despite a facially-deficient motion[,]" allowed Wu to set a hearing on her motion to appoint a receiver without a certificate of conference, and allowed the hearing to occur eleven days after it granted the first attorney's motion to withdraw. *See* TEX. R. CIV. P. 10 (stating required elements of an attorney's motion to withdraw).

There is no record that Lin objected to his counsel's motion to withdraw or to the setting and holding of the hearing on the motion to appoint a receiver.[7] "As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion[.]" TEX. R. APP. P. 33.1(a)(1). Because Lin fails to show that he raised complaints regarding his counsel's withdrawal and the hearing appointing the Receiver and obtained a ruling on his complaints, Lin has waived these complaints for appeal. *In re A.T.*, No. 05-16-00539-CV, 2017 WL 2351084, at *7 (Tex. App.—Dallas May 31, 2017, no pet.) (mem. op.) (holding party waived complaint that motion to withdraw did not comply with rule of civil procedure 10 by not presenting the complaint to the trial court); *In re J.A.*, 482 S.W.3d 141, 149 (Tex. App.—El Paso 2015, no pet.) (concluding that appellant waived his complaint that the trial court scheduled a hearing without a certificate of conference by not bringing his complaint to the attention of the trial court); *Donihoo v. Lewis*, No. 01-08-00277-CV, 2010 WL 1240970, at *11 (Tex. App.—Houston [1st Dist.] Mar. 25, 2010, pet. denied) (mem. op.) (holding appellant waived her complaints that trial court's grant of motion to withdraw by counsel violated her

---

[7] During the hearing concerning the receiver's report and motion to ratify—the only hearing transcript that is included in the record—Lin's counsel stated that "[d]uring the hearing for the appointment of the receiver Mr. Lin did not have counsel present" and that "[h]is previous counsel had withdrawn I believe ten days earlier[.]" Lin's counsel did not object to the withdrawal of counsel or to Lin's being without counsel at the hearing concerning the appointment of the receiver nor did he obtain a ruling on an objection. *See* TEX. R. APP. P. 33.1(a)(1).

–10–

constitutional right to representation by effective counsel because she failed to raise complaint in the trial court). As a result, these complaints were not preserved for our review.[8]

We resolve Lin's second issue against him.

## RATIFICATION OF RECEIVER'S ACTIONS

In his third issue, Lin argues that the trial court abused its discretion when it ratified the conduct of the Receiver because the Receiver acted outside of the district court's order appointing the Receiver by (1) reopening and operating the business for profit instead of trying to preserve and "secur[e] the property" and (2) exercising authority over a joint venture when the Receiver only had authority over "business entities associated with Man Lin." Lin also argues that, because the Receiver acted outside the scope of the trial court's order, the court abused its discretion by concluding that the Receiver was entitled to derived judicial immunity.

We review the trial court's decision whether to ratify the actions taken by a receiver under an abuse of discretion standard. *See Akin, Gump, Strauss, Hauer and Feld, L.L.P. v. E-Court, Inc.*, No. 03-02-00714-CV, 2003 WL 21025030, at *3 (Tex. App.—Austin May 8, 2003, no pet.) (mem. op.). Assuming, without deciding, that this issue was preserved for appellate review,[9] we conclude that the trial court did not err by finding that the Receiver's actions were authorized by the order appointing the Receiver and, as a result, that he acted within the scope of his authority and was entitled to derived judicial immunity. "Like a court-appointed bankruptcy trustee acting within his authority as trustee, a court-appointed receiver acts as an arm of the court and is immune from

---

[8] Because of our disposition, we need not address Lin's argument that his signature on the final decree of divorce in which he agreed to end the receivership did not waive his right to complain on appeal regarding the appointment of and conduct by the receiver. *See* TEX. R. APP. P. 47.1.

[9] At the hearing concerning ratification of the Receiver's actions and compensation, the following exchange occurred:

THE COURT: . . . [Y]ou all entered into some—whatever you believed at the time when you entered your final decree to discharge the receiver without filing any type of motions that would be—would indicate to anyone that you had any issues with the manner in which the receiver conducted himself in that manner—in this matter; is that correct?

[LIN'S COUNSEL]: I believe so, Your Honor.

THE COURT: Okay. I just want to make sure that the record is clear on that.

–11–

liability for actions grounded in his conduct as receiver." *Rehabworks, LLC v. Flanagan*, No. 03-07-00552-CV, 2009 WL 483207, at *2 (Tex. App.—Austin Feb. 26, 2009, pet. denied) (mem. op.); *see also Clements v. Barnes*, 834 S.W.2d 45, 45 (Tex. 1992) (stating that "because bankruptcy trustees are 'arm[s] of the court,' they are immune from liability for actions grounded in their conduct as trustee" and only lose derived immunity when they act in the "clear absence" of their jurisdiction) (quoting *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. 1981) (per curiam) and *Mullis v. U.S. Bkr. Ct.*, 828 F.2d 1385, 1390 (9th Cir. 1987)).

Lin argues that "[n]othing in paragraphs 9 through 13" of the order appointing the Receiver "specifically instructs the receiver to reopen and operate the business for profit." But paragraph seven of the order authorizes the Receiver "to take any actions necessary to secure payments and to manage, control, and dispose of the property of MAN LIN including any entity in which MAN LIN controls and/or holds an interest in, whether direct, indirect or beneficial, which includes, but is not limited to, the following entities: Dongfanghong, LLC, d/b/a SAKE FISH." And paragraph nine of the order vests the Receiver with the "following powers necessary to manage, control, and dispose of the property of MAN LIN," including "[t]o take control, custody, and possession of the assets of MAN LIN and DONGHANGHONG, LLC[,]" "[t]o take possession and control of the restaurant doing business as SAKE FISH and/or DONGFANGHONG, LLC to the exclusion of all others[,]" and "[t]o exercise all powers and rights exercisable by MAN LIN in reference to the property described above[.]" We conclude that the trial court did not err by finding that the Receiver's actions were within the scope of authority that the court granted the Receiver in the order.

Lin also argues that the Receiver's actions did not "preserve" and "protect[]" the assets of the parties as required by the receivership order because taking a "struggling business, behind on its rent, back into operations is not a preservation of the alleged community estate." But the record

reflects that, after taking control of the restaurant, the Receiver closed the business for a few days to clean and bring the restaurant into code compliance, and then reopened the restaurant. After operating the restaurant for approximately three weeks, the Receiver concluded that the restaurant was losing money and incurring additional debt and, as a result, it was in "the best interest of the parties and the minor child to shut down operations" in order "to avoid further losses." Consequently, the record reflects that the Receiver acted with the aim of preserving the property as required by the order appointing the Receiver.

Lastly, Lin argues that the "receiver was not empowered to take control over a joint venture, but only those business entities associated with Man Lin." Lin argues that, as a result, the Receiver "knowingly acted outside the scope of the court's power[.]" He contends that the trial court erred by ratifying the receiver's conduct because the court did not have jurisdiction over the joint venture as the joint venture "was not a party to the underlying case."[10] The Receiver responds that—assuming that a joint venture existed and "not some type of contract employment relationship with the workers found in the Restaurant"—he did not "take over a joint venture[.]" He argues that, instead, he took possession of "Lin's property including his LLC that did business as Sake Fish." The Receiver contends that, "[a]t most, either Man Lin and/or his LLC were partners in a joint venture" and, "[i]f there was indeed a joint venture, the Receiver acted only in his capacity as a member of that joint venture." The Receiver argues that he ultimately took steps to withdraw Lin "and/or" his LLC from the joint venture "assuming one existed."

In reply, Lin argues that the trial court's finding in the order appointing the Receiver that "Lin is in sole control of Dongfanghong LLC and Sake Fish and that these entities constitute the

_____

[10] In his reply brief, Lin argues that the Receiver incorrectly relies on *Alpert v. Gerstner*, 232 S.W.3d 117, 130–31 (Tex. App.—Houston [1st Dist.] 2006, pet. denied), because "[h]ere we are met with a receiver that was met with a clearly erroneous circumstance, he admits to finding a partnership/joint venture at the restaurant, which contradicts the court's finding that only Man Lin owned the restaurant." In light of our disposition, we conclude that the Receiver properly relies upon *Alpert* for the contention that a court-appointed receiver is entitled to derived judicial immunity for all acts authorized by the court in which the receiver acts as an arm of the court. *See id.*

–13–

entirety of the marital estate" is incorrect and that the Receiver admitted that, when he "approach[ed] the restaurant to take over, the persons present alerted him that a joint venture or partnership was working [at] this location." Lin argues that the Receiver should have returned to the trial court to obtain a correct order giving him power over the partnership assets but, instead, he took "over a joint venture/partnership and r[a]n a business that is under a partnership." Lin contends that, because he acted outside the scope of his authority, he is not entitled to judicial immunity.

We conclude that the trial court did not err by finding that the Receiver acted within his authority when he operated the business associated with Lin, including any purported joint venture involving Lin. Lin contends that, "[a]ccording to the receiver, the restaurant, Sake Fish, was a joint venture by multiple parties," and, as a result, the court's finding that Sake Fish was the property of Man Lin and the marital estate was incorrect. But the record does not support Lin's argument. Instead of stating that the restaurant Sake Fish was a joint venture, the Receiver's report stated that there were "two, if not three, separate businesses operating within the premises of the Restaurant using a joint venture cost sharing arrangement, attempting to share common overhead." These included a sushi counter[11] solely for Lin's benefit (and presumably for the benefit of his sake fish apprentice), a "noodles" business operated by Willy, which "included everything else offered by the Restaurant," with "the possible exception of a third business, a 'Peking Duck' operation." The report stated that each business "apparently 'pocketed'" cash paid by patrons and credit card transactions were run through the account maintained by Lin for the restaurant, with the agreement that Lin would then remit the amount owed to each partner—although it did not appear that Lin was remitting the share of receipts owed to the other partners. Ultimately, as the Receiver testified,

---

[11] The Receiver's report stated, "One of these joint venture businesses was MAN LIN operating 'Sake Fish,' a sushi counter solely for the benefit of MAN LIN, and presumably his sake fish apprentice."

–14–

"Willy and the Peking Duck operation had claims exceeding $10,000 against Mr. Lin individually, against the community estate individually." The Receiver testified that the "deal Mr. Lin did with Willy was an individual deal, which was community debt[.]" The record reflects that the Receiver took over Lin's property that included the LLC doing business as Sake Fish. And the Receiver—both as attorney in fact for Lin and as receiver for the LLC—entered into a mutual release of the debt with Willy. In addition, the Receiver negotiated a release of a debt with the landlord on behalf of Lin individually and the LLC, not on behalf of a joint venture.

Based on the evidence in the record and the broad language in the order appointing the Receiver, including granting the Receiver power "to manage, control, and dispose of the property of MAN LIN including any entity in which MAN LIN controls and/or holds an interest in, whether direct, indirect or beneficial," we conclude that the trial court did not err by finding that the Receiver acted within the scope of his authority with respect to Lin individually and his purported interests in any joint venture.

We conclude that the trial court did not err by ratifying the Receiver's conduct and by finding that the Receiver acted in accord with the powers granted to the Receiver by the court in its order appointing the Receiver. As a result, we also conclude that the trial court did not err by finding that the Receiver was entitled to derived judicial immunity. *See Glasstex, Inc. v. Arch Aluminum & Glass Co.*, No. 13-07-00483-CV, 2016 WL 747893, at *3–4 (Tex. App.—Corpus Christi Feb. 25, 2016, no pet.) (mem. op.) (stating a receiver is shielded by derived judicial immunity when acting as an arm of the court and when sued for actions taken within the scope of the receiver's authority); *Rehabworks*, 2009 WL 483207, at *4 (same).

We resolve Lin's third issue against him.

–15–

**CONCLUSION**

We resolve Lin's three issues against him and affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

160916F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF A.W.L., A CHILD

No. 05-16-00916-CV

On Appeal from the 330th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-15-03681.
Opinion delivered by Justice Lang-Miers, Justices Fillmore and Stoddart participating.


In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Wen Wu and the court-appointed receiver Kevin Buchanan recover their costs of this appeal from appellant Man Lin.


Judgment entered this 17th day of January, 2018.